RICHARD M. CALLAHAN, JR.
225 South Lake Avenue, Suite 300
Pasadena, CA  91101
Telephone:  (626) 202-4060
Telecopier:  (626) 794-4676
State Bar No. 100446
Email: *rmcallahanjr@gmail.com*

Attorney for Defendant
GREGORY PUSATERI

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>DAVID PRITCHARD, *et al.,*<br><br>　　　　　　Defendants.<br>_____ | Case No.  CR 14-282-R-4<br><br>**DEFENDANT GREGORY PUSATERI'S MOTION FOR NEW TRIAL PURSUANT TO RULE 33 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE**<br><br>Date:  January 26, 2015<br>Time:  1:30 p.m.<br>Place: Courtroom of the Honorable<br>　　　　Manuel L. Real |

TO ACTING UNITED STATES ATTORNEY STEPHANIE YONEKURA AND ASSISTANT UNITED STATES ATTORNEYS ELLYN LINDSAY AND BYRON MCLAIN:

　　　　PLEASE TAKE NOTICE that on January 26, 2015 at 1:30 p.m. or at another date and time convenient to the Court, defendant Gregory Pusateri will move this Court for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.  This motion is based upon the attached points and authorities, the files and records of this case, and any argument that may be heard on this motion.

/

| | | |
|---|---|---|
| 1 | Dated: December 5, 2014. | Respectfully submitted, |
| 2 | | THE LAW OFFICES OF |
| | | RICHARD M. CALLAHAN, JR. |
| 3 | | |
| 4 | | By: _____ |
| 5 | | RICHARD M. CALLAHAN, JR. |
| | | Attorney for Defendant |
| 6 | | GREGORY PUSATERI |

# DEFENDANT GREGORY PUSATERI'S MOTION FOR NEW TRIAL

## I

## INTRODUCTION

On November 21, 2014, Defendant Greg Pusateri was convicted of 27 counts of mail fraud, wire fraud, and selling unregistered securities, arising out of his employment as a phone salesperson at Gigapix Studios.  Defendant Pusateri now seeks a new trial due to the Court's evidentiary rulings preventing several Gigapix investors from testifying that Mr. Pusateri never made the key misrepresentations that supported his conviction, primarily:  1) there was absolutely no risk in either the Gigapix or OZ3D offerings, and these investments were "guaranteed;" and 2) the investor would receive a phenomenally high rate of return on their investment within a short time.  Mr. Pusateri's witnesses would have directly contradicted the witnesses testifying about these purported misrepresentations, and would have created substantial doubt on the existence of the charged scheme to defraud investors.

Rule 33(a) of the Federal Rules of Criminal Procedure provides in pertinent part:

> Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires.

"A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal." *United States v. Kellington,* 217 F.3d 1084, 1097 (9th Cir. 2000) (quoting *United States v. Alston,* 974 F.2d 1206, 1211 (9th Cir. 1992)).  "The court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses." *Id.*  Erroneous evidentiary rulings can justify granting a new trial. *See United States v. Jenkins*, 499 F. Supp. 2d 1268 (M.D. Fla. 2007).

/
/
/

-1-

## II

## ARGUMENT

**A. DEFENDANT PUSATERI IS ENTITLED TO A NEW TRIAL DUE TO THE PRECLUSION OF CRITICAL DEFENSE TESTIMONY THAT WOULD HAVE PUT THE EXISTENCE OF THE CHARGED SCHEME TO DEFRAUD IN DOUBT**

This case was not about a defendant's actions, as occurs in most federal cases, but rather his choice of words. In a "he said—she said" case such as this, the government offered several investors who said they were told the investment had no risk, and were guaranteed to have astronomical returns shortly after they invested. After the prosecution cherry-picked four out of Mr. Pusateri's 260 clients to testify against him, Mr. Pusateri was prevented from presenting a list of investors of his own, based on a hearsay objection from the prosecution, who would have testified to the *exact opposite* of the prosecution investor-witnesses. Since Mr. Pusateri was not allowed to present such contradictory and exculpatory evidence to the jury, there was no possible way of showing that the prosecution witnesses were mistaken in their testimony, had misunderstood, or had forgotten the details of Mr. Pusateri's telephone calls. In essence, Greg Pusateri was denied the ability to present a defense.

Not only would the proffered defense testimony impeach the prosecution investor-witnesses, but it would have struck at the heart of the government's purported scheme to defraud. How could Mr. Pusateri be involved in a scheme to defraud if investors would testify Mr. Pusateri told them Gigapix was a speculative investment, and warned them about investing too much? If Greg truly was a part of the scheme the government alleged, Mr. Pusateri would have sought to mislead every investor, not just a hand-selected few.

Mr. Pusateri made an offer of proof highlighting the key aspects of the defense witness testimony regarding what representations Greg made to them. Specifically:

/

### Troy Judd

> Troy Judd would have testified that he had a number of conversations with Greg Pusateri over the years, and that Greg made absolutely no promises about the possible success of the Gigapix or OZ3D investments. Greg advised Judd of the risks involved in the investment, and never stated that the investment was "guaranteed" "a sure thing" or words to that effect. Greg never promised a return on the investment, a date when the returns would commence, nor the amount of any possible return. Judd would have testified that whenever he spoke to Mr. Pusateri, Greg always said the same thing: "Never invest more than you can afford to lose."

### Larry and Margaret Suggett

> The Suggetts both would have testified to several conversations they had with Greg through the years, and that Greg told them the investment in Gigapix was speculative. He never told them there was no risk, or that the investment was "guaranteed." Mr. and Mrs. Suggett also would have testified that Greg did not want them to invest too much in Gigapix, since he did not want to strap the Suggett family financially. They would have testified that Greg never promised a return, or a particular rate or date of return. Greg told them that Gigapix was "trying to be" another Pixar. Just like Troy Judd, they both distinctly remember Greg Pusateri telling them, "Never invest more than you can afford to lose."

The exculpatory testimony from the defense-investors was admissible for several reasons, specifically:

### 1. The Exculpatory Testimony from the Investors Was Not Hearsay Since It Was Not Offered for the Truth of the Matter Asserted

"The hearsay rule does not operate to render inadmissible every statement repeated by a witness as made by another person. It does not exclude evidence offered to prove the fact that a statement was made, rather than the truth." *See, United States v. Anfield*, 539 F.2d 674, 678 (9th Cir. 1976)*; United States v. Hatcher*, 496 F.2d 529 (9th Cir. 1974). Here, the defense-investor testimony proved what Mr. Pusateri said to

-3-

investors was the exact opposite of what the one percent of investors handpicked by the prosecution testified to for the government. For whatever reason, the prosecution investor-witnesses were mistaken in their testimony, and the defense investor-witnesses would have painted the true picture of what was said, and would have impeached the prosecution version of what actually transpired.

In *United States v. Abascal*, 564 F.2d 821 (9th Cir. 1977), defendant Frakes was charged with a narcotics conspiracy, and the government offered wiretap conversations from co-defendant Petroff's telephone purporting to prove Frakes' involvement in the conspiracy by virtue of words used by Petroff in a conversation with Frakes, which the government argued was coded narcotics terminology. Frakes then attempted to introduce taped conversations of other Petroff transactions to prove that the purported narcotics code words were actually routine communications about real estate deals. The district court excluded Frakes' proffered recordings as hearsay.

The Ninth Circuit reversed, holding that Frakes' proffered taped conversations were not offered for the truth, but simply to corroborate Abascal's defense theory:

> Frakes did not offer the conversations to prove the truth of any assertions therein, but rather *to show a pattern of Petroff's verbal behavior* on the telephone that was consistent with Frakes' argument that the January 14 call was about an innocent real estate deal. Frakes had a right to argue to the jury Frakes' theory of the conversation upon which the government was building its case against Frakes.
>
> * * *
>
> Whether or not Frakes could prove it, he had the right to use any available evidence to argue to the jury that the real estate language was not code language….The question was one for the jury. The exclusion of the tapes offered by Frakes denied him the right to present an important part of his defense, and was prejudicial error.

*Id.* at 830 (emphasis added) (citation omitted). Similarly, admission of evidence of other investors' testimony paints a wholly contrary picture to that presented by the prosecution's investor-witnesses, and disproves the government's alleged scheme to defraud. The testimony of the defense investor-witnesses should have been allowed.

### 2. **The Proffered Testimony Was Highly Relevant to the State of Mind of the Investors and Is Admissible**

Statements do not qualify as hearsay when they "are not offered for the truth of the matter asserted, but [a]re admitted to establish that the statement was made or to demonstrate the effect the statement had on the hearer." *Montoya v. Orange Cnty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 993 (C.D. Cal. 2013) (quoting *United States v. Kirk*, 844 F.2d 660, 663 (9th Cir. 1988)); *United States v. Arteaga*, 117 F.3d 388, 397 (9th Cir. 1997) (statements offered to show the effect on hearer not hearsay).

One of the key elements of the mail and wire fraud statutes is that the representations made in furtherance of the charged scheme to defraud were "material;" that is, "they had a natural tendency to influence, or were capable of influencing, a person to part with money or property." [Gov't. Proposed Inst. No. 9]. It is the effect that the representation has on the "hearer" of that representation—the investor—that is critical. Here, the entire case against Mr. Pusateri rested on what Greg told the investors and the effect it had on their decision to invest. Mr. Pusateri's representations to the defense-investors were admissible on this ground as well.

### 3. **The Testimony of the Defense Witness/Investors Would Be Admissible As a Prior Consistent Statement Under Federal Rule of Evidence 801(d)(1)(B)**

Mr. Pusateri testified on direct examination that: 1) he never told an investor there was no risk, or that the investment was a "sure thing" or "guaranteed," 2) he never promised a return on the investment, or a particular rate of return, and 3) he always told the potential investors never to invest more than they could afford to lose. On cross-examination, the prosecution attacked Mr. Pusateri's credibility, and challenged the veracity of his testimony. The testimony of the defense investor-witnesses therefore becomes admissible as substantive evidence as a prior consistent statement as provided by Federal Rule of Evidence 801(d) (1) (B), which states:

> (d) Statements That Are Not Hearsay. A statement that meets the following conditions is not hearsay:
>
> (1) *A Declarant-Witness's Prior Statement.* The declarant testifies and is subject to cross-examination about a prior statement, and the statement . . . (B) is consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying.

To admit statements under Rule 801(d)(1)(B), the party that seeks to admit the statements must satisfy four elements:

> (1) the declarant must testify at trial and be subject to cross-examination;
> (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony;
> (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and
> (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose.

*United States v. Chang Da Liu*, 538 F.3d 1078, 1086 (9th Cir. 2008) (quoting *United States v. Collicott,* 92 F.3d 973, 979 (9th Cir. 1996)). Prior consistent statements under Rule 801(d)(1)(B) are admissible for the truth of the matter asserted. *United States v. Payne*, 944 F.2d 1458, 1470 (9th Cir. 1991).

All of these elements are easily satisfied. After the prosecution cross-examined Mr. Pusateri, insinuating he was fabricating his testimony, he became entitled under Rule 801(d)(1)(B) to introduce statements he made *before* he had any motive to fabricate that was fully consistent with his trial testimony. Mr. Pusateri was available to be cross-examined about the defense-investor testimony. It is difficult to imagine a prior statement with more inherent credibility than one made to other prospective investors in Gigapix or OZ3D during the same offerings. This investor testimony was relevant and admissible, and a new trial is warranted as a result.

/
/

### 4. **<u>Exclusion of Reliable and Critical Testimony from the Defense-Investors Violated the Fifth Amendment Due Process Clause and the Sixth Amendment Right to Present a Defense</u>**

"The Constitution guarantees criminal defendants a 'meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). "'A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence . . . .'" *Id.* (quoting *In re Oliver*, 333 U.S. 257 at 273 (1948)). "The Supreme Court has made clear that the erroneous exclusion of critical, corroborative defense evidence may violate both the Fifth Amendment due process right to a fair trial and the Sixth Amendment right to present a defense." *DePetris v. Kuykendall*, 239 F.3d 1057, 1062 (9th Cir. 2001), (citing *Chambers*, 410 U.S. at 294).

Even assuming that a valid hearsay objection exists to the defense-investors exculpatory testimony, such does not end the inquiry. As the Ninth Circuit has routinely held, "[e]ven when evidence is excluded on the basis of a *valid* application of the hearsay rules, such exclusion may violate due process if the evidence is sufficiently reliable and crucial to the defense." *United States v. Hayat*, 710 F.3d 875, 899 (9th Cir. 2013) (emphasis in original) (quoting *United States v. Lopez-Alvarez*, 970 F.2d 583, 588 (9th Cir. 1992) (citing *Chambers*)).

In deciding if the exclusion of evidence violates the due process right to a fair trial or the right to present a defense, the Ninth Circuit balances the following five factors:

(1) the probative value of the excluded evidence on the central issue;

(2) its reliability;

(3) whether it is capable of evaluation by the trier of fact;

(4) whether it is the sole evidence on the issue or merely cumulative; and

(5) whether it constitutes a major part of the attempted defense.

*Chia v. Cambra*, 360 F.3d 997, 1004 (9th Cir. 2004) (citing *Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir. 1985)).

Applying the *Chia* factors demonstrates the violation of Mr. Pusateri's constitutional rights under the Fifth and Sixth Amendment. The excluded testimony from the defense-investors was probative of the central issue in the case: what did Greg Pusateri represent to potential investors? The proffered testimony was extremely reliable, since Troy Judd, along with Larry and Margaret Suggett, lost their total investment in Gigapix and OZ3D, yet each was willing to testify that Greg Pusateri advised them of the risks and uncertain returns associated with the investment. There is absolutely no motive for these investors to fabricate their testimony. The jury could easily evaluate the defense-investor testimony, since the jury had to evaluate other investor testimony in reaching their verdict. The defense-investor testimony was *critical* to Mr. Pusateri's defense, since without their testimony countering the testimony of the prosecution-investors, Mr. Pusateri was unable to challenge the most damaging evidence against him. A new trial is more than justified for this constitutional violation.

## CONCLUSION

For the reasons stated, a new trial should be granted for Gregory Pusateri.

Dated: December 5, 2014.

Respectfully submitted,
THE LAW OFFICES OF
RICHARD M. CALLAHAN, JR.

By: _____
RICHARD M. CALLAHAN, JR.
Attorney for Defendant
GREGORY PUSATERI