Stanley I. Greenberg (SBN 053649)
A Law Corporation
11845 West Olympic Boulevard, Suite 1000
Los Angeles, CA 90064
Telephone: (424) 248-6600
Facsimile: (424) 248-6601
Email: stanmanlaw@aol.com

Attorney for Defendant:
CHERIE BROWN

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No.  CR 14-282-R |
| Plaintiff, | ) |
| vs. | ) **MEMORANDUM OF POINTS &** |
| | ) **AUTHORITIES IN SUPPORT OF** |
| CHERIE BROWN, | ) **MOTIONS TO DISMISS AND/OR** |
| Defendant. | ) **GRANT A NEW TRIAL PURSUANT** |
| | ) **TO RULES 29 (C) AND 33, FRCrP** |
| | ) |
| | ) **DATE: JANUARY 26, 2015** |
| | ) **TIME: 1:30 P.M.** |

Defendant Cherie Brown hereby files her Memorandum of Points & Authorities in

Support of her motions to dismiss and/or for a new trial, pursuant to Rules 29 (c) and 33,

FRCrP.

Dated:  December 9, 2014                 Respectfully submitted,


_____/s/_____
Stanley I. Greenberg
Attorney for Defendant
CHERIE BROWN

i

# TABLE OF CONTENTS

Page

I.    Prefatory Statement.................................................................................1

II.   Introduction.........................................................................................1

III.  The Trial Court's Erratic Behavior and Biased Rulings Deprived Defendant of
      Her Fair Trial and Due Process Rights...............................................2

      A. Biased Behavior During Opening Statements..............................2

      B. Improper Receipt and Use of Evidence Pursuant to Rule 404(b)...........3

      C. Improper Exclusion of Exculpatory Evidence..............................5

      D. Impeding Defendant's Confrontation Right to Cross-examine
         Witnesses.................................................................................8

      E. The Trial Court Improperly Interfered with Defendant's Confrontation Right
         to Demonstrate Bias on the Part of a Witness................................11

      F. The Trial Court Allowed Government Counsel to Commit Prosecution
         Misconduct by Ignoring the Court's Pre-trial Evidentiary Order; and In Fact,
         Allowed the Government to Argue it to the Jury.............................13

      G. The Trial Court Improperly Interfered With the Defendant's Right to Present
         Her Theory of Defense................................................................14

      H. Failure to Give Defense Requested Instructions (Documents 90)...........15

      I. Other Evidence of Erratic Conduct by the Trial Court Interfering with a Fair
         Trial.........................................................................................16

IV.    PREJUDICE TO DEFENDANT.................................................17

V.     SUMMARY & CONCLUSIONS.............................................17

# TABLE OF AUTHORITIES

Page

**Cases**

*Duckett v. Godinez*, 67 F.3d 774 (9th Cir. 1995)...............................................19

*Wayne v. County of Maricopa*, 747 F.3d 1048 (9th Cir. 2012)............................5

*U.S. v Abascal*, 564 F.2d 821 (9th Cir. 1977)....................................................7

*U.S. v. Anfield*, 539 F.2d 674, 678 (9th Cir. 1976)............................................7

*U.S. v. Bibo-Rodriguez*, 922 F.2d 1398 (9th Cir.), cert denied, 111 S.Ct.2861 (1991)....4

*U.S. v. Carreon*, 572 F.2d 683 (9th Cir. 1978)........................................ 11, 18, 19

*U.S. v. Carter*, 491 F.2d 625 (5th Cir. 1974)..................................... 5

*U.S. v. DeLuca*, 692 F.2d 1277, 1282 (9th Cir. 1982)........................................18

*U.S. v. Dinone*, 954 F.2d 839 (2nd Cir 1992)................................................. 5

*U.S. v. Harris*, 501 F.2d 1 (9th Cir. 1974)...............................................18, 19

*U.S. v. Hatcher*, 496 F.2d 529 (9th Cir. 1974)..................................................7

*U.S. v. Mayans*, 17 F.3d 1174 (9th Cir. 1994)................................... 4, 7, 14, 18

*U.S. V. Mehrmanesh*, 689 F.2d, 822, 830 (9th Cir. 1982)...................................4

*U.S. v. Taglione*, 546 F.2d 194 (5th Cir. 1977)............................................. 5

*U.S. v. Tory*, 52 F.3d 207 (9th Cir. 1995)....................................................18

*Zucker v. Gigapix Releasing, David Pritchard, et al*, No. BC 508338....................8

**Rules**

Rule 29 (c), FRCrP..................................................................................... 1

Rule 33, FRCrP........................................................................................ 1

Rule 104, FRCrp.......................................................................................10

Rule 401 Fed.R. Ev.................................................................................. 4

Rule 403 Fed.R. Ev.................................................................................. 4

Rule 404 (b), Fed.R. Ev............................................................................ 3, 4

Rule 607, Fed. R. Ev...............................................................................11

Rule 801 (d)(2)(D)...................................................................................10

Rule 803(3), Fed. R. Ev............................................................................5, 6

**Other**

Canon 2 of the ABA Model Code of Judicial Conduct.......................................... 19

Canon 3 (A) (3) of the Code of Conduct for United States Judges........................... 19

## MEMORANDUM OF POINTS & AUTHORITIES

## I.

### Prefatory Statement

This memorandum is prepared without the benefit of reference to transcripts of the proceedings. Accordingly, descriptions and quotations from the record are based on notes and best memory, along with the recollections of others who were present.

Further, defendant reserves the right to raise additional issues prior to the hearing on this motion, or in any appeal that might follow.

## II.

### Introduction

This pleading seeks relief in the alternative.   We seek a judgment of acquittal pursuant to Rule 29 (c), FRCrP on the grounds that the evidence was legally insufficient to support a verdict.

In the alternative, defendant seeks a new trial pursuant to Rule 33, FRCrP.   The reasons are that the defendant was denied a fair trial, her right to present a defense, along with violations of her due process rights. This was due to the erratic and biased conduct of the trial court.  He deliberately conducted the trial in a manner so as to put his finger on the scales of justice to the unfair disadvantage of the defendant.  He did this in many ways. Among them were inconsistent and contradictory rulings and frequent unjustified interruptions of defendant Brown's trial counsel.   These were not the kind of routine interruptions designed to clarify the issues or move things along administratively. Those

are quite normal and acceptable.  These interruptions were always displayed with an angry face and an angry, loud and impatient tone. Indeed, the trial court's tone and facial expressions displayed unmistakable, derision, disdain and disrespect; and were obviously intended to communicate to the jury the trial court's bias against defendant's counsel, the defense case and defendant herself.  The trial court displayed no comparable behavior towards government counsel.  Clearly, all the interruptions and unjustified rulings aided the prosecution.  The chart of interruptions follows:

Interruptions of Ms. Brown's counsel               24+

Interruptions of Government counsel                 0

## III.

### The Trial Court's Erratic Behavior and Biased Rulings Deprived Defendant of her Fair Trial and Due Process Rights

**A.**     **Biased Behavior During Opening Statements**

The trial court's conduct in depriving Ms. Brown of a fair trial surfaced immediately during Opening Statements.  Based on prior experience with this court, defense counsel first sought and obtained permission, <u>before opening statements</u>, to display to the jury a document that the parties had stipulated was admissible and would be received in evidence.  (It was a press release).  The Court agreed this would be permissible.

During the prosecution's opening statement, government counsel displayed several documents to the jury as part of a power point presentation. These included, *inter alia*,

several Cease and Desist Orders and a Private Placement Memorandum.  These documents had not yet been received in evidence.  No one objected, and the Court said not a single word.

During defense counsel's opening statement, as he went to display the single document on the Elmo for the jury's view, the trial court interrupted:  "Talk about the evidence," he barked in a loud voice.  Defense counsel attempted to explain this <u>was</u> the "evidence" the court had approved before Opening Statements began, but to no avail.  "Take it down!" barked the Court angrily.   As would become painfully apparent, the rules in this court are different for the defense than they are for the prosecution.

This was the start of what would be the pattern of the entire trial:  frequent angry, unjustified and disrespectful interruptions of defense counsel's presentation, with nothing comparable for the prosecution. The Court's disdain and disrespect for the defense were palpably obvious to anyone in the courtroom.  The jury could not help but be impacted by the trial court's obvious bias and favoritism toward the prosecution.

**B.**    **Improper Receipt and Use of Evidence Pursuant to Rule 404 (b)**

Long before trial the Government stated its intention to offer evidence pursuant to Rule 404 (b), Fed.R. Ev.  The specific evidence was the fact that defendant Brown had previously worked at Big Sky Studios, an independent film studio. (The prosecutor would later argue in its Closing that these movies made no money, and this supposedly allowed an inference of defendant's guilt).   However, the Government had filed no motion that

would allow the trial court to take the steps legally required to allow or disallow such evidence.

Accordingly, defense counsel filed a short brief advising the Court of the prerequisites for admission under the law (Document 110).   The government must first, "articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence."   Thereafter the Court must conduct the requisite balancing before ruling, pursuant to Rules 401, 403 and 404 (b), Fed.R. Ev.  *U.S. v. Mehrmanesh*, 689 F.2d, 822, 830 (9th Cir. 1982); *U.S. v. Mayans*, 17 F.3d 1174 (9th Cir. 1994); *U.S. v. Bibo-Rodriguez*, 922 F.2d 1398 (9th Cir.), *cert denied*, 111 S.Ct.2861 (1991).   We thought we were doing the Court a favor by pointing out the potential for legal error unless the court followed the correct procedures.   It was not received that way.

The Court's handwritten ruling read:  "Denied. No good cause shown." (The good cause, of course, is what the law requires).   Defendant renewed that request (Document 174), but the Government never said more than it was offering the evidence for the laundry list of purposes set forth in Rule 404 (b) (knowledge, intent, absence of mistake or accident, etc.).   And the trial court never required the Government to "articulate precisely the evidential hypothesis."   Nor did the Court conduct the required balancing.   Indeed, the court received this evidence in virtually the same manner as it did in *Mayans*, *supra*; a case in which the very same trial court was faulted for the same error in improperly receiving Rule 404 (b) evidence.

4

## C.    Improper Exclusion of Exculpatory Evidence

The gist of the fraud charges against Ms. Brown is that she said things she should not have said (misrepresentations) and failed to say things that she should have said (concealment of material facts).  These allegations are set forth with great specificity in the Indictment, at pp. 7-10.

The only way these charges can be proven or disproven is through testimony of what Ms. Brown said and what she did not say to investors.  It is a classic case of non-hearsay because whatever she did or did not say is not being offered for the truth of the matter asserted. Instead, it is relevant for the fact of what was said (or not said).  Hence, such statements to investors are clearly admissible as bearing on her state of mind at the time of the alleged statements, as provided in Rule 803(3), Fed. R. Ev.; *Wayne v. County of Maricopa*, 747 F.3d 1048 (9th Cir. 2012); *U.S. v. Dinone*, 954 F.2d 839 (2nd Cir 1992); *U.S. v. Taglione,* 546 F.2d 194 (5th Cir. 1977); *U.S. v. Carter*, 491 F.2d 625 (5th Cir. 1974).

This was the rule applied to government witnesses. However, a different rule was applied to defense witnesses.  For example, Tiffany Ryan was a government witness. She was a fellow employee of Ms. Brown's at Gigapix; and she was allowed to answer questions about what she did and did not say to investors when trying to raise funds.  Of course, her answers aided the prosecution and were therefore allowed.

However, a different application of the rule was invoked for defense witnesses. The prosecution called 3 investors to make its case against Ms. Brown:  Eric Tate, Danny

Zucker and Jerome Goodman.  To rebut these witnesses, Ms. Brown called 2 investor-witnesses in her defense:   Dr. Jack Feldsher and Phillip Ruyle (himself an investment advisor).  Dr. Feldsher was actually named in the indictment as a victim-investor.  But the government declined to call him as a witness (thereby conceding a failure of proof) for the obvious reason that his testimony would be exculpatory to Ms. Brown.

Both Feldsher and Ruyle invested purportedly due to the efforts of Ms. Brown. However, neither was allowed to testify as to what Ms. Brown did and did not tell them, while presumably attempting to get them to invest.  More specifically, each would have rebutted the specific allegations in the Indictment.  Each would have testified to things she did not say (which the Indictment alleges she did say but should not have); and each would have testified to things she did say (which the Indictment alleges she did not say but should have).  [One exception is how investor funding would purportedly be allocated.  She did not discuss this with investors since she was not privy to this information].

Clearly, both were prepared to testify as to things Ms. Brown did and/or did not say, thereby rebutting the inferences raised by the prosecution witnesses.  The Court excluded their testimony on the basis of a "hearsay" objection, although this testimony was clearly not being offered for the truth of the matter asserted out of court. Instead it was being offered for the fact it was said, or not, as bearing on the declarant's then existing state of mind under Rule 803 (3).  The statements Ms. Brown did and did not

make to investors were, in fact, the *res gestae* of the crime.  How else could one prove or disprove the crime alleged?  There is no other way.

The fallacy of the Court's ruling is readily apparent by following it to its logical conclusion.  Suppose Gigapix had 100 investors.  Suppose further the Government picked and chose 3 investors to testify Ms. Brown allegedly told them Gigapix was financially successful.  Given this Court's ruling, the defense would be prohibited from calling the other 97 investors to say she said something completely different.  This Court's ruling means a defendant would <u>never</u> be able to rebut the government's case in the only way a rebuttal defense would have any meaning or weight.  Under the Court's ruling, she would be limited to her own lonely denial, and be prohibited from calling corroborative witnesses, or to contradict the allegations in the Indictment.

This restriction is not allowed when the evidence is offered not for the truth of the matter asserted, but because it was said.  The failure to allow such evidence is clear error and unduly interferes with the defendant's right to present a defense.  *U.S. v Abascal*, 564 F.2d 821 (9th Cir. 1977); *U.S. v. Anfield*, 539 F.2d 674, 678 (9th Cir. 1976); *U.S. v. Hatcher*, 496 F.2d 529 (9th Cir. 1974).

Aside from the erroneous legal reasoning that went into this ruling, it is fatally wrong for an even worse reason.  It shows this trial court interprets the rules differently for the defense than the prosecution.  This is hardly the first time this Court has done this.  Indeed, it has previously been faulted and advised that such conduct is not lawful.  *Mayans, supra*, at 1186.

7

**D.** **Impeding Defendant's Confrontation Right to Cross-examine witnesses**

A key prosecution witness was Danny Zucker.  He was an investor who had dealings with Ms. Brown, as well as the company president, David Pritchard, and the company business development manager, Shawn Walker.  However, in his direct examination he laid the blame for his investments virtually entirely on the word of Ms. Brown.  Thus, his cross-examination was critical to her defense.   He had apparently forgotten, for example, that in June 2014 he executed a declaration under penalty of perjury in which he stated his belief that Ms. Brown believed in the product; and that he felt she had been taken in by Pritchard and Blauvelt.  This was the essence of her defense: she did believe in what she was selling but ultimately learned that she—like the investors—had been deceived by management.

Without question, the most critical document to impeach Zucker's credibility was a civil Complaint he filed in Los Angeles County Superior Court on May 13, 2013 (*Zucker v. Gigapix Releasing, David Pritchard, et al*, No. BC 508338).  (Trial exhibit 558). In that Complaint he made statements <u>directly</u> contradicting his sworn trial testimony implicating Ms. Brown:

> "18. On or about August 5, 2010, *David Pritchard*, the
>
> President of Gigapix Studios, Inc represented to Plaintiff
>
> Zucker that Gigapix needed to borrow Seven Hundred
>
> Thousand Dollars ($700,000) in funds <u>and there was no</u>
>
> <u>risk if any funds were borrowed.</u>

8

19.  On or about August 31, 2010 David Pritchard, President

of Gigapix contacted Plaintiff Zucker and increased his

proposal to borrow $700,000.00 in funds by providing a

one and one half percent (1.5%) stake in the profits in addition

to return of my principal and interest if Plaintiff Zucker loaned

Gigapix Studios $700,000 in funds.

20.  On or about October 3, 2010 David Pritchard, President of

Gigapix contacted Plaintiff Zucker and represented that Plaintiff

Zucker would earn a minimum of ten times (10X) to twenty

times (20X) the money loaned to Gigapix as part of the profit

sharing incentive he was adding to the proposed promissory

note between Plaintiff Daniel Zucker and defendant Gigapix

R.

21.  Based upon the representations of David Pritchard, on or

about November 4, 2011, Plaintiff Zucker agreed to loan $700,000

to Defendant Gigapix R.

22.  On or about January 20, 2011 based upon the representations

of David Pritchard, Plaintiff Daniel Zucker was induced and did in

fact loan $700,000 to Defendant Gigapix as described in the

Promissory note attached hereto and hereby incorporated by

Reference as Exhibit A."  (Emphasis added).

(Trial Exhibit 558, ruled "inadmissible" by the trial Court).

As is evident from the above allegations from Mr. Zucker's civil Complaint, he previously placed 100 % of the blame for his investment and subsequent losses on David Pritchard. He made <u>no allegations</u> against Ms. Brown in this Complaint for damages. This is obviously powerful evidence of a most significant series of prior inconsistent statements. However, the trial court interfered with the cross-examination, and would not allow its use. Judge Real asked witness Zucker if he had actually read the Complaint. Mr. Zucker responded in the affirmative. Clearly disappointed, Judge Real then terminated that line of cross-examination by stating, "This was prepared by some lawyer."

We note the shockingly irrelevant reason given by the trial court to terminate this line of cross-examination: that the Complaint was "prepared by some lawyer." Of course it was (as are most Complaints), but it was filed in Mr. Zucker's name, and it was Zucker who was the Plaintiff in that civil lawsuit. The lawyer was acting as Zucker's agent. As such, any statements he made are admissible against Zucker under Rule 801 (d) (2) (D), Fed. R. Ev., as any lawyer or judge should know. If the Court had any doubts it certainly could have undertaken to make a preliminary finding under Rule 104, Fed. R.Ev; but, of course, the court did not bother to do so.

The result was that defense counsel was never able to complete his cross-examination on this point once the court ended the line of inquiry with its meaningless observation that the Complaint was "prepared by some lawyer."

The trial court's interference clearly infringed Ms. Brown's confrontation right, her cross-examination of a key government witness, and her right to present a defense.  This is hardly the first time Judge Real has unfairly interfered with cross-examination involving a related civil lawsuit, resulting in yet another reversal.  *U.S. v. Carreon*, 572 F.2d 683 (9th Cir. 1978).

### E.   **The Trial Court Improperly Interfered with Defendant's Confrontation Right to Demonstrate Bias on the Part of a Witness**

Colin Mutton was the CFO of Gigapix. He was a prosecution witness at the trial of co-defendants Pritchard and Blauvelt.  The prosecution did not call him as a witness at the trial of Ms. Brown; however, he was called as a defense witness by Ms. Brown. Given the uncontested evidence, his lies to the FBI, and his own admissions, this is a person who certainly could—and likely should—have been indicted himself.  Thus, he had strong motivation to favor the Government in his testimony.

Counsel for Ms. Brown sought to impeach Mutton by showing bias, clearly allowed under Rule 607, Fed. R. Ev.  The facts that <u>would</u> have been elicited, if allowed by the trial court, were that Mr. Mutton had declined to be interviewed by counsel for Ms. Brown, stating that counsel was "on the wrong team," and that Mr. Mutton considered himself "on the government team."  Further, upon receiving his subpoena, he advised counsel of his personal hatred for Mr. Brown and that he intended to do everything possible to hurt her while on the witness stand.

The trial court, with no government objection, interrupted yet again and ended the effort to show bias.  Judge Real disallowed this impeachment, observing as apparent justification that, "this man is not on trial."  This is yet another shockingly irrelevant fact used by the trial court to undermine the defense, and thereby aid the prosecution. Whether Mr. Mutton was or was not on trial is irrelevant, since all witnesses may be impeached, including the party calling them.  Any lawyer or judge should know this.

However, it obviously accomplished the trial court's purpose, which was to avoid having the witness impeached, and his credibility diminished.  It further aided the trial court's persistent objective to imply to the jury defense counsel was doing something improper.  This became even more significant later for 2 reasons:  (1) Judge Real allowed the prosecutor free rein to roam with this witness the territory of innuendo and conjecture—with no actual proof—so the witness could imply that Ms. Brown was having intimate relations with Mr. Pritchard.  This is one of the oldest—and dirtiest— pages from the prosecutor's playbook.  Unsatisfied they could actually convict her of the charges on real evidence, they turned her into a slut; and (2) when government counsel, in closing argument, urged the jury to give weight to Mutton's testimony because he was actually called as a witness by the defense.

Unfortunately, Judge Real's continuous interference prevented the jury from hearing of Mr. Mutton's obvious bias and stated intent to hurt Ms. Brown on the witness stand.  Bias, of course, is one of the most fundamental ways to impeach a witness.  To

think it was not allowed because the witness was "not on trial" makes one wonder what rules of evidence, if any, were applied here; certainly not the Federal Rules of Evidence. .

**F.**     **The Trial Court Allowed Government Counsel to Commit Prosecution Misconduct by Ignoring the Court's Pre-trial Evidentiary Order; and, in fact, Allowed the Government to Argue it to the Jury**.

Counsel raised with the Court pre-trial certain evidentiary issues. One of them addressed whether victim witnesses could be asked the hypothetical question whether they would have invested years ago <u>if</u> they had known the risk.  The Court ordered that could not be asked.  As reflected in Judge Real's pre-trial order (Document 113):

> "However, the government may <u>not</u> ask its victim witnesses
>
> the hypothetical question whether if they had known the risk
>
> they would have invested." (Emphasis added).

This was an order drafted and presented by AUSA Lindsey, so clearly the government knew of it. Government counsel twice asked a separate "victim-witness" that exact question (once by each prosecutor).  And both witnesses were allowed to answer.  Moreover, government counsel repeated the answer in his closing argument to enhance the credibility of the witnesses.  These clear violations of the Court's pre-trial order were committed in the presence of Judge Real, but without a single peep from him.

Recently, this U.S. Attorney Office has been publicly criticized for instances of prosecution misconduct.  It is therefore not shocking to see the prosecutor try to take unfair advantage.  However, one would hope that the trial court would have an interest in

assuring its own orders are obeyed.  (After all, the trial court was certainly not shy about interrupting defense counsel repeatedly, even when he was doing nothing wrong).  In this case, one who entertained such a hope would be disappointed.

This is all the more remarkable given the number of times the Court verbally interrupted barked loud angry orders at undersigned counsel.  This demonstrates once again the erratic nature of the Court's rulings and that the rules are applied differently for the prosecution than the defense, just as in *Mayans, Id*.  And, of course, this open violation of the Court's order (apparently with approval of the court) was to the clear prejudice of the defendant.  Indeed, that is presumably why the Judge Real prohibited it in the first place, but never bothered to enforce the government's blatant violation of his order, not once, not twice, but thrice.

**G.     The Trial Court Improperly Interfered With the Defendant's Right to Present Her Theory of Defense**

The Indictment alleged Ms. Brown was a co-schemer to defraud investors, with named co-schemers Pritchard, Blauvelt and Pusateri, along with "others known and unknown."  Indictment, page 2.  Her defense was, *inter alia*, that she did not scheme with her charged co-schemer Pusateri; and, in fact, was specifically deceived by alleged schemers Pritchard and Blauvelt.  There was substantial evidence of such deception, both verbal and documentary.

Thus, it was important for her to show that she did not co-scheme with any of the other potential co-schemers.  This would obviously include Gigapix officers Colin

Mutton and Shawn Walker. Mutton was also shown to have clearly deceived her in writing (Trial exhibit 507). We attempted to show through questioning of Mr. Walker that he did not consider himself a co-schemer. In fact, defense counsel asked him if he believed he was part of such a scheme with Ms. Brown. But the court interrupted (again) and would not allow him to answer the question because he "was not on trial."

Again, we cannot help but note the shockingly irrelevant reason given by the trial court to cut off cross-examination. The issue was whether he was or was not a co-schemer, not whether or not he was on trial. And the Court unduly interfered with Ms. Brown's defense, angrily interrupting (again) and not allowing an answer to that question. The result was the deprivation of her right of confrontation and her right to present a defense. It had the collateral effect of once again conveying to the jury that defense counsel must be doing something wrong.

## H.   Failure to Give Defense-Requested Instructions (Document 90)

Consistent with her defense, Ms. Brown requested two instructions:

(1) The standard "good faith" instruction; and

(2)  Weaker and Less Satisfactory Evidence

The former was based on the evidence in the case, including her testimony. More specifically, Ms. Brown advised investors of what she was told and provided by management, and believed in good faith. The latter instruction was justified by the dispute over what she said and did not say to the FBI in her interview, coupled with the

concession by the FBI that her request to record the conversation would have produced stronger and more reliable evidence.

## I.   Other Evidence of Erratic Conduct by the Trial Court Interfering with a Fair Trial

1.   At the conclusion of the first day's court session, following the parties' Opening Statements, the trial Court instructed the jurors to "ignore everything they had heard that day." (One wonders why we were invited to give opening statements at all).

2.   The trial court would not provide the jurors a copy of the jury instructions, in spite of a jury note requesting that they be given a copy. The Court did provide a copy of the redacted Indictment, over objection of defense counsel.

3.   Upon discharging the jury following the return of the verdict, the trial court instructed them they were not allowed to discuss anything about the case with anyone. The Court even provided them a phone number to call if someone tried to speak to them. This effectively prohibited counsel from exploring with willing jurors possible misconduct or confusion. And, of course, it is a very convenient way for the Court to assure that if there was some juror confusion or misconduct, it would never come to light.

4.   Counsel for Ms. Brown objected to the government's closing argument regarding a hypothetical question as mis-stating the record. Counsel was

16

not even allowed the dignity of being overruled. Instead, the court angrily

snarled, "Sit Down!"  Of course, counsel has a legal and ethical duty to

lodge an objection when called for.  But the Court's reaction could only

convey to the juror that defense counsel had done something wrong again

when, in fact, he had lodged a perfectly well-founded objection, one for

which the court made no ruling.

## IV.

## PREJUDICE TO DEFENDANT

None of this can be characterized as "harmless error."  This was not a "slam-dunk" for the prosecution.  To the contrary, there was a large body of evidence undermining the prosecution's theory and supporting the defense of Ms. Brown.  This included a large number of documents and live witnesses.  It included substantial evidence that she was deceived by her employer and was not in a common scheme with them.  If this case presented overwhelming evidence of guilt, perhaps it could be swept under the rug. But this was a close case. It is precisely the kind of case where the conduct of the trial judge (described herein) almost certainly had a substantial impact on the jury, to the benefit of the prosecution and the disadvantage of the defense.

## V.

## SUMMARY & CONCLUSIONS

This particular trial court has a lengthy and well-documented history of this type of behavior, virtually always in favor of the prosecution and to the disadvantage of the

defense. *Mayans, supra*; *Carreon, supra*; *U.S. v. Tory*, 52 F.3d 207 (9th Cir. 1995); *U.S. v. DeLuca*, 692 F.2d 1277, 1282 (9th Cir. 1982); and *U.S. v. Harris*, 501 f.2d 1 (9th Cir. 1974).

Actually, this case is strikingly similar to the *Carreon* case, *supra*. Both involved the same trial judge. In both, Judge Real refused to allow defense counsel to show what a related civil lawsuit was about on cross-examination. And in both, repeated interruptions by Judge Real, without objections by the prosecutor, and the general disrespectful treatment of defense counsel required reversal and a new trial.

To the same effect is *U.S. v. Harris*, 501 F.2d 1 (9th Cir 1974), where Judge Real was reversed yet again for the same conduct. Just as in this case, he unduly interfered with the defendant's right to cross-examine a key witness. The 9th Circuit reversed the conviction because defendants' constitutional right of confrontation was violated; and Judge Real's interruptions that aided the prosecution gave the impression that the trial court was not performing its impartial role. The Court further held that Judge Real overstepped the bounds of judicial propriety by excessively interjecting himself into the proceedings. Any fair and impartial review of the record of this trial will demonstrate the same. Further, any review of the numerous cases in which Judge Real has been reversed for the same improper conduct reflect it is not an aberration; it is his *modus operandi*.

Moreover, the cold transcript is not capable of reflecting the oppressive and prejudicial nature of Judge Real's conduct, especially with respect to his frequent interruptions of only one defense counsel. The transcript cannot capture the unjustified

looks of anger etched in the face of the judge.  And it cannot accurately capture the absolutely venomous tone of derision, disdain and disrespect which this trial court reserved exclusively for defense counsel for Ms. Brown.  The result was an extremely high level of interference by this trial court, which created a pervasive climate of partiality and unfairness.  That is the standard that will justify a new trial.  *Duckett v. Godinez*, 67 F.3d 774 (9th Cir. 1995); *Harris, supra; Carreon, supra.*

We add here that this court <u>should</u> be bound by judicial standards of ethics.  Canon 2 of the ABA Model Code of Judicial Conduct directs that a judge **shall** perform judicial duties "impartially."  Canon 3 (A) (3) of the Code of Conduct for United States Judges mandates that judges treat lawyers in a manner that is "respectful and courteous."  This trial court fell so far short of those standards as to be obvious to all present.

But a mere lack of courtesy and respect is not the only problem. It was the impact of the trial court's erratic conduct on the jury that matters.   This jury received a steady drumbeat of lack of courtesy, rudeness, anger, derision, disdain and disrespect.  The jury could <u>only</u> interpret this as disapproval of defense counsel, his client, and the defense case. It is not as if the trial court treated all the lawyers the same. If that were the case, the jurors might attribute the conduct to a generally erratic nature.  But when this conduct is repeatedly and pervasively directed at a single lawyer, as here, we submit no jury could fail to be impacted to the disadvantage of that lawyer's client.

19

WHEREFORE, for the foregoing obvious reasons, we move this court to recuse itself for obvious bias, so that this case can be assigned to any other judge to rule on this motion; and to preside over any and all further proceedings.

Dated:  December 9, 2014                          Respectfully submitted,

                                                  _____/s/_____
                                                  Stanley I. Greenberg
                                                  Attorney for Defendant
                                                  CHERIE BROWN