# EXHIBIT 454 (Part 2 of 2)

"SCHEDULE A"

USE OF PROCEEDS
2011

| 2011 | |
|---|---|
| **Personnel/Salaries** | $325,000 |
| **General & Administration** | $100,000 |
| **Programming, Development &Acquisitions** | $200,000 |
| **Merger Expenses** | $300,000 |
| **Miscellaneous** | $ 75,000 |
| **Total** | $1,000,000 |



"SCHEDULE B"

PROJECTS

**"OZ3D": "OZ3D" is in production at Arc Productions (formerly Starz Animation). Company has raised nearly all the production budget from Canadian tax credits, advances for Canadian rights, licensing advances, international presales and private equity investments. Arc recently produced and released a 3D version of "Gnomeo & Juliet" through Disney which generated in excess of $97,000,000 at the North American box office. The Company and its partners expect OZ3D to be in theaters in the third quarter of 2013.**

**Recess Films: A slate of five kids' live action comedies to be financed and produced in Canada using Canadian tax credits, Canadian presales, international presales and an equity investment of 40-50% of the budget. Company has developed this cross-collateralized slate to be funded with off balance sheet financing. The total production budget of the films is $50,000,000.**

**Gigapix Releasing, LLC: This company currently has two films slated for U.S. release. "Mother's Day"- intended for wide theatrical and DVD release through Vivendi; and "The Tortured"- limited theatrical and DVD release through Vivendi. The Company plans to release these titles with a $13,000,000 revolving line of credit for prints and advertising and is in the market closing a $100,000,000 print and advertising fund. Gigapix Releasing, LLC plans to theatrically release 8-12 feature films per year over the next three years.**

**Gigapix TV: Company has its first prime time TV series ("Workaholics") on Comedy Central which premiered on April 6, 2011, behind the new season premiere of "South Park". Company released its first documentary series "Baker Boys: Inside the Surge" through EOne video into the DVD market, after a premiere television run on HDNET. Company is working with TV personalities Melissa and Joan Rivers to produce shows and is additionally closing the sale of three new TV series to cable networks since the arrival of its new head of TV, Chuck Labella.**

17 of 17

## AGREEMENT

This Confidential Agreement ("Agreement") dated as of May 6th, 2011, is between Gigapix Studios, Inc., ("Gigapix") a California corporation located at 9333 Oso Ave. Chatsworth CA 91311, and MSH Entertainment Corp. ("MSH"), a company with its principle offices located at 808 Gladstell, #309, Conroe, Texas, 77304 OZ3D, LLC, a Nevada limited liability company also located at 9333 Oso Ave. Chatsworth CA 91311 ("OZ3D"), and Gigapix Releasing, LLC. a California limited liability company also located at 9333 Oso Ave. Chatsworth CA 91311 ("Gigapix Releasing") (collectively "Companies") and David Pritchard, an individual residing at 20110 N[illegible] Los Angeles CA, on the one hand, and Christopher Blauvelt ("Executive"), an individual residing at 10949 Fruitland Dr Studio City 91604, on the other. The term "Parties" shall refer collectively to Companies and Executive the term "Party" shall refer to Companies or Executive or Gigapix or OZ3D or Gigapix Releasing individually.

## WARRANTS AND RECITALS

WHEREAS, Executive is the CEO, Founder and Chairman of the Board of Gigapix who presently holds 12,217,500 shares of Gigapix common stock representing 46.72% of the Company's outstanding shares; and

WHEREAS, Executive is the Founding and Managing Member of OZ3D; and

WHEREAS, Gigapix represents and warrants to Executive that Gigapix is a Managing Member with 33.33% vested interest in Gigapix Releasing with the capacity and authority to enter into and bind Gigapix Releasing to this Agreement and to the Consulting Agreement referenced herein; and

WHEREAS, MSH Entertainment Corp. ("MSH"), a company with its principle offices located at808 Gladstell, #309, Conroe, Texas, 77304 , is engaged in the development, production and distribution of live action and animated television (TV) specials, TV movies, and TV series, as well as movies for broadcast TV, cable, satellite, and syndicated TV, has indicated its interest in entering into a binding merger agreement with Gigapix ("Proposed Merger"), which will result in the formation of a new public entity and successor to Gigapix, ("NEWCO"); and

WHEREAS, Gigapix represents and warrants to Executive that pursuant to the terms of the Proposed Merger, Gigapix has the capacity and authority to enter into and to bind NEWCO as its successor entity to the Consulting Agreement referenced herein; and

WHEREAS, MSH represents and warrants to Executive that pursuant to the terms of the Proposed Merger, MSH has the capacity and authority to enter into and to bind NEWCO as its successor entity to the Consulting Agreement referenced herein; and

WHEREAS, the Parties desire for the Executive to continue his affiliation with the Companies and NEWCO pursuant to the terms of a Consulting Agreement and the terms set forth herein.

NOW THEREFORE, in consideration of the mutual promises exchanged herein, and the representations and warrants made by the Parties in the Recitals above, which the Parties acknowledge and agree are binding and material, the Parties agree:

## AGREEMENT

### *Modification of Terms of Executive's Employment with Gigapix*

1. Gigapix, for itself and on behalf of NEWCO, MSH, for itself and on behalf of NEWCO, and Gigapix Releasing agree to employ the Executive pursuant to the Consulting Agreement attached hereto as "**Exhibit A**."

2. In consideration of the mutual promises set forth herein and the terms and conditions of employment pursuant to the Consulting Agreement, Executive agrees to resign as chairman and chief executive officer of Gigapix and to remain as a board member of Gigapix's Board of Directors until the Proposed Merger is consummated, but immediately thereafter to resign as a member of the Gigapix's Board.

3. The Parties agree to make a joint announcement of the Executive's resignation from Gigapix, subject to written approval by all Parties.

4. In the event that the animated feature"OZ3D" is produced by OZ3D, LLC, Executive shall receive (i) credit as an "executive producer", credit placement is subject to distributor approvals, and (ii) after all participants in the project and the members of OZ3D, LLC have been paid, two and a half percent (2 ½%) of Gigapix's net receipts, if any, for the period of seven (7) years from the date of the earlier of its initial theatrical release or other commercial release. For avoidance of doubt or confusion, the definition of net profits for applying Executive's participation shall be defined on a most favored nations basis with other producer participants and as any proceeds received by Gigapix from OZ3D, LLC or any and all successors after all payments are made to retire the OZ3D, LLC's investors and all interest thereon, production and print and advertising investors and any interest thereon and any and all other standard entertainment industry obligations.

### *Executive's Interest in and Agreement to Vote Gigapix and NEWCO Shares*

5. Executive agrees to vote Executive's common shares in Gigapix certificate #C10000 (representing 12,217,500 shares) in favor of the Proposed Merger at any duly constituted meeting of the Board of Directors held prior to October 31, 2011.

6. Post-Merger, Executive shall exchange his shares in Gigapix representing 12,217,500 shares, which currently represent 46.72% of Gigapix, for shares in NEWCO representing 15% of the outstanding shares and capitalization of NEWCO at the closing of the Merger.

7. Executive or his transferees, assigns or heirs shall vote Executive's shares in NEWCO along with David Pritchard's shares as directed by the board of directors of the NEWCO for the period commencing on the date of the full execution of this Agreement and continuing uninterrupted for a period of two (2) years.

### *Executive's Access to Gigapix, Gigapix Releasing, OZ3D and NEWCO Documents*

8. Executive and his attorneys and CPAs retained to advise him on matters related to the subject matter herein shall have the right to inspect and copy on demand all business records related to Gigapix, Gigapix Releasing, OZ3D and NEWCO until such time as tphe Proposed Merger is completed, including, but not limited to, all documents and financial information related to

Proposed Merger. Following the Proposed Merger, Executive shall have all of the rights and remedies of a major shareholder of the Company in accordance with the Securities and Exchange Commission regulations and NEWCO's by-laws.

***Executive's Resignation and Terms of This Agreement Are Contingent Upon Consummation of the Proposed Merger***

9. The Parties acknowledge and agree that this Agreement, and the mutual promises, terms and conditions set forth herein, are contingent upon the consummation of the Proposed Merger and the Parties acknowledge and agree that if the Proposed Merger is not consummated by October 31, 2011, this Agreement shall be rescinded and the Parties will be returned to the position they held immediately before entering into this Agreement, which shall include, but not be limited to, a rescission of the Executive's resignation and the reinstatement of the Executive as Chairman and CEO of Gigapix with 12,217,500 shares of Gigapix common stock representing 46.72% of the Gigapix's outstanding shares, and the restoration of all of Executive's control of, and interest in, Gigapix, OZ and Gigapix Releasing.

***Pre-Dispute Arbitration Clause***

10. This Agreement shall be governed and construed in accordance with the laws of the State of California. In any dispute, action or proceeding arising out of, related to, or in connection with this Agreement, the Parties consent to be subject to the exclusive jurisdiction and venue of the federal and state courts in Los Angeles, California. Each of the Parties consents to the service of process in any action commenced hereunder by certified or registered mail, return receipt requested, or by any other method or service acceptable under federal law or the laws of the State of California. AS TO ANY ACTION OR PROCEEDING ARISING OUT OF, RELATED TO OR IN CONNECTION WITH THIS AGREEMENT, THE PARTIES HEREBY AGREE TO WAIVE THEIR RIGHTS TO A TRIAL BY JURY. In the event of a dispute under this Agreement, the Parties agree to binding arbitration pursuant to the rules of the American Arbitration Association. Such arbitration shall take place in Los Angeles, California and California law shall apply; the parties hereto waiving any claim or defense that such forum is not convenient or proper. The prevailing party shall be entitled to attorneys' fees and costs. If Gigapix or OZ3D, LLC, or Gigapix Releasing LLC or MSH or NEWCO breach this Agreement, Executive shall be limited to its remedy at law for money damages, if any, and shall not have the right to in any way enjoin or restrain the distribution, advertising, marketing or exploitation of the of any projects and/or any work or activities of Gigapix, OZ3D, LLC or Gigapix Releasing LLC or their respective affiliates.

***Non-Disparagement***

11. Executive agrees not to disparage the Companies, its officers, directors, employees, shareholders, and agents, in any manner likely to be harmful to its or their business, business reputation, or personal reputation; provided that Executive will respond accurately and fully to any question, inquiry or request for information when required by legal process. The Companies and their executives and officers, including David Pritchard and Colin Mutton, agree not to disparage Executive in any manner likely to be harmful to his business, business reputation, or personal reputation; provided that The Companies may respond accurately and fully to any question, inquiry or request for information when required by legal process.

*Miscellaneous Provisions*

12. The Parties agree that in the event any inconsistencies between this Agreement and the standard Gigapix shareholder agreement and/or the standard NEWCO shareholder agreement, if any, the terms of this Agreement shall supersede and prevail.

13. The Parties understand and agree that the promises and payments in consideration of this Agreement shall not be construed to be an admission of any liability or obligation by any of the parties to the other and the Parties make no such admission.

14. This Agreement, including **"Exhibit A,"** constitutes the complete, final and exclusive embodiment of the entire agreement between Executive and the Companies with regard to its subject matter. It is entered into without reliance on any promise or representation, written or oral, other than those expressly contained herein, and it supersedes any other such promises, warranties or representations. This Agreement shall supersede and extinguish all prior employment agreements, express or implied, verbal or written, between Executive and the Companies. This Agreement may not be modified or amended except in a writing signed by both Executive and a duly authorized officer of each of the Companies. This Agreement will bind the heirs, personal representatives, successors and assigns of both Executive and the Companies, and inure to the benefit of both Executive and the Companies, their heirs, successors and assigns. If any provision of this Agreement is determined to be invalid or unenforceable, in whole or in part, this determination will not affect any other provision of this Agreement and the provision in question will be modified so as to be rendered enforceable. Any ambiguity in this Agreement shall not be construed against either Party as the drafter. Any waiver of a breach of this Agreement shall be in writing and shall not be deemed to be a continuing waiver or a waiver of any successive breach. This Agreement may be executed in counterparts and facsimile signatures will suffice as original signatures.

15. The provisions of this Agreement will be held in strictest confidence by the Parties and will not be publicized or disclosed in any manner whatsoever; provided, however that: (a) the Parties may disclose this Agreement in confidence to their respective attorneys, accountants, auditors, tax preparers, and financial advisors; (b) the Companies may disclose this Agreement as necessary to fulfill standard or legally required corporate reporting or disclosure requirements; and (c) the Parties may disclose this Agreement insofar as such disclosure may be necessary to enforce its terms or as otherwise required by law. In particular, and without limitation, Executive agrees not to disclose the terms of this Agreement to any current or former Companies' employee.

16. This Agreement may be signed in any number of counterparts and by facsimile, PDF, JPEG, or TIFF. Each such counterpart shall be deemed to be a duplicate original, and all of which shall constitute one agreement. Such separate execution shall be of full force and effect so long as each party has executed the same agreement. Facsimile, PDF, JPEG, or TIFF copies of this agreement and signatures thereon shall be valid and binding on the parties.



If the foregoing is in accord with your understanding please execute where indicated below:

AGREED AND ACCEPTED

_______________________ Date: 5/6/11
Christopher Blauvelt ("Executive")

AGREED AND ACCEPTED
Gigapix Studios, Inc. ("Gigapix")

By: _______________________ Date: 5/6/11
David Pritchard
Its: President

AGREED AND ACCEPTED
OZ3D, LLC

By: _______________________ Date: 5/6/11
David Pritchard
Its: Managing Member

AGREED AND ACCEPTED
Gigapix Releasing, LLC ("Gigapix Releasing")

By: _______________________ Date: 5/6/11
Gigapix Studios, Inc.
Its: Managing Member

AGREED AND ACCEPTED
Gigapix Releasing, LLC ("Gigapix Releasing")

By: _______________________ Date: 5/8/11
Geno Taylor
Its: Managing Member

AGREED AND ACCEPTED
MSH Entertainment Corp. ("MSH")

By: _______________________ Date: _______________

Its:

AGREED AND ACCEPTED

_______________________ Date: 5/6/11
David Pritchard

**Exhibit A**

**CONSULTING AGREEMENT**

This Consulting Agreement ("Consulting Agreement" or "Agreement") dated as of May 6th, 2011, is between Gigapix Studios, Inc., ("Gigapix") a California corporation located at 9333 Oso Ave. Chatsworth CA 91311, MSH Entertainment Corp., a company with its principle offices located at 808 Gladstell, #309, Conroe, Texas, 77304 ("MSH") and OZ3D, LLC, a Nevada limited liability company also located at 9333 Oso Ave. Chatsworth CA 91311 ("OZ3D"), and Gigapix Releasing, LLC. a California limited liability company also located at 9333 Oso Ave. Chatsworth CA 91311 ("Gigapix Releasing") (collectively "Companies"), on the one hand, and CHRIS BLAUVELT CONSULTING, INC. ("Consultant") a California corporation with its principle offices located at 10949 FRUITLAND DR STUDIOCITY CA 91604, on the other. The term "Parties" shall refer collectively to Companies and Consultant.

**WARRANTS AND RECITALS**

WHEREAS, Gigapix is a California corporation and OZ3D is a Nevada limited liability company both with offices located at 9333 Oso Avenue, Chatsworth, California 91311; and

WHEREAS, Gigapix represents and warrants to Consultant it is a Managing Member with 33.33% vested interest in Gigapix Releasing with the capacity and authority to enter into and bind Gigapix Releasing to this Consulting Agreement; and

WHEREAS, MSH Entertainment Corp. ("MSH"), a company with its principle offices located at 808 Gladstell, #309, Conroe, Texas, 77304, is engaged in the development, production and distribution of live action and animated television (TV) specials, TV movies, and TV series, as well as movies for broadcast TV, cable, satellite, and syndicated TV, has indicated its interest in entering into a binding merger agreement with Gigapix ("Proposed Merger"), which will result in the formation of a new publicly traded entity and successor to Gigapix, ("NEWCO"); and

WHEREAS, Gigapix and MSH represent and warrant to Consultant that pursuant to the terms of the Proposed Merger, former Gigapix shareholders' interest in NEWCO will be 82.5%, and, Gigapix and MSH have the capacity and authority to enter into and to bind NEWCO to this Consulting Agreement; and

WHEREAS, the Parties desire for Consultant to provide services to the Companies and NEWCO pursuant to the terms of a Consulting Agreement and the terms set forth herein.

NOW THEREFORE, in consideration of the mutual promises exchanged herein, and the representations and warrants made by the Parties in the Recitals above, which the Parties acknowledge and agree are binding and material, the Parties agree to enter into this Consulting Agreement.

# AGREEMENT

1. **TERM.** The Companies will employ Consultant on the terms and conditions set forth herein. Consultant's employment shall commence on the date this Consulting Agreement is fully executed by all Parties ("Commencement Date") and shall continue uninterrupted for a period of three (3) years (the "Agreement Term").

2. **TITLE/DUTIES OF EXECUTIVE.**

2.1 Consultant shall designate an Executive who shall provide services to the Companies as a consultant ("Designated Executive" or "Executive"). The Consultant hereby designates Christopher Blauvelt as such Executive who shall serve as the Executive pursuant to this Consulting Agreement. The Executive will have such duties, responsibilities and authorities as are customary for an executive in a position as an executive producer in the film entertainment industry. Each Executive shall enter into an "Inducement Agreement" a copy of which is attached hereto as Schedule A and made a party of this Agreement by reference.

2.2 The Executive designated by Consultant shall devote such of Executive's business time to the performance of his duties as an executive producer to the Companies as may be reasonably necessary to promote and advance the business of the Companies.

2.3 The Executive designated by Consultant may be employed to provide services to another company except on a full time or first priority basis, and may serve on advisory boards, and may engage in any other business activities (whether or not pursued for pecuniary gain), so long as such other activities do not violate Executive's obligations under this Agreement.

3. **COMPENSATION AND BENEFITS.** During the Agreement Term, as compensation for services to be rendered by the Consultant under the terms of this Consulting Agreement, the Companies jointly and severally unconditionally agree to compensate Consultant with the following:

3.1 FEE. The Companies shall pay Consultant a fee of Seven Hundred Fifty Thousand Dollars ($750,000), payable at Two Hundred Fifty Thousand Dollars ($250,000) per year, for the three year Agreement Term commencing the sooner of either August 1, 2011, or the date the Proposed Merger is complete (the "Fee"). The Fee shall be payable in equal monthly payments for the Agreement Term. The Fee shall not be subject to any withholdings, including withholding taxes.

3.2 EXECUTIVE PRODUCER CREDIT. Consultant shall designate an Executive who shall receive credit as an "executive producer" (or other equivalent credit) on the animated feature film entitled "OZ3D". In addition Consultant shall receive 2.5% of the "net proceeds" of Gigapix from "OZ3D"consistent with the definition as applied to Gigapix and/or NEWCO.

3.3 MEDICAL BENEFITS. The Companies will provide Christopher Blauvelt, Becky Blauvelt, and Jack, Joseph and Kathryn Blauvelt, with full and uninterrupted, medical, dental, and disability insurance coverage that provides at least the same coverage as currently provided,

and the Companies will pay all premiums for such coverage for five (5) years from Commencement Date.

3.4 EFFECT OF DEATH OR DISABILITY. In the event of death or total disability of the executive designated by Consultant during the Agreement Term, no later than ten (10) calendar days following the applicable death or disability date, the Companies shall pay or provide Executive's estate, as the case may be, (i) the continued Fee and Benefits and (ii) in the case of death of the Executive, such remaining Fee and Benefits shall be provided to the estate of the deceased Executive for his family under the then existing terms of this Consulting Agreement.

**4. PROPRIETARY INFORMATION AND NON-DISCLOSURE.**

4.1 Consultant understands and acknowledges that the Companies possess and will continue to possess information that has been created, discovered, or developed by, or otherwise become known to, Gigapix (including, without limitation, information created, discovered, developed or made known to by Executive during the period of or arising out of his employment with Gigapix) or in which property rights have been or may be assigned or otherwise conveyed to Gigapix, which information has commercial value in the business in which Gigapix is engaged and is treated by Gigapix as confidential. Except as otherwise provided herein, "Proprietary Information" shall include, without limitation, all project data, budgets, lists, creative developments, designs, marketing plans, financial statements, strategies, licenses, prices, costs, research, technology, improvements, screenplays, treatments, TV concepts/formats, contracts and agreements with talent and potential acquisition candidates.

4.2 Notwithstanding the foregoing, Proprietary Information shall not include information that: (i) is or becomes part of the public domain through no act or omission of the Consultant and/or Executive; (ii) was in the lawful possession of Consultant and/or Executive prior to the disclosure and had not been obtained by Consultant and/or Executive on a confidential basis, given that executive was a founder of the Company all materials and concepts in the hands of executive at Company formation are not considered proprietary to the Company; (iii) is lawfully disclosed to Consultant and/or Executive by a third party without restriction on disclosure; or (iv) is required to be disclosed by any federal or state law, rule or regulation or by any applicable judgment, order or decree or by any court or governmental body or agency having jurisdiction on the matter.

4.3 All Proprietary Information shall be the sole property of Gigapix and its successors and assigns unless otherwise agreed in writing by Gigapix and Consultant. At all times during the Agreement Term and for a period of one (1) year thereafter, Consultant and Executive will keep in strictest confidence and trust all Proprietary Information, and other than in connection with or in a manner related to the performance of his duties hereunder, Consultant and Executive shall not use or disclose any Proprietary Information without the written consent of Gigapix as determined by a majority of the Board.

**5. NOTICES.** For the purpose of this Agreement, notices and all other communications between Consultant and Gigapix shall be in writing and deemed to have duly given when

personally delivered or three (3) days after being sent by registered or certified mail, return receipt requested, or upon delivery by common carrier to the following address:

To the Consultant:
Chris Blauvelt Consulting, Inc.
10949 FRUITLAND DR
STUDIO CITY CA 91604

To Gigapix:
Gigapix Studios, Inc.
9330 Oso Ave.
Chatsworth CA 91311

6. **BINDING AGREEMENT.** Each party represents and warrants to the other that the person signing this Agreement below has the authority to bind the party to this Agreement and that this Agreement will legally bind both the Companies and Consultant. This Agreement will be binding upon and benefit the parties and their heirs, administrators, executors, successors and permitted assigns. To the extent that the practices, policies, or procedures of Gigapix, now or in the future, are inconsistent with the terms of this Agreement, the provisions of this Agreement shall control.

7. **ENTIRE AGREEMENT.** This Agreement is intended to be the final, complete, and exclusive statement of the terms of Consultant's relationship with respect to the subject matter hereof. Any ambiguity in this Agreement shall not be construed against either party as the drafter.

8. **AMENDMENTS; WAIVERS.** Neither this Agreement nor any term hereof may be amended, waived, discharged, or modified except by a writing signed by Consultant and by a duly authorized representative of the Companies. Any waiver of the application of any term or provision herein or breach hereof shall not be deemed to be a waiver of any other term, provision or breach and shall not be deemed a waiver of any subsequent application of such term or provision or the occurrence of a subsequent breach.

9. **SEVERABILITY.** If any provision of this Agreement is held to be unenforceable, invalid or void by a court of competent jurisdiction, such provision shall be enforced to the fullest extent permitted by law, and the remainder of this Agreement will remain in full force and effect.

10. **HEADINGS.** Headings used in this Agreement are for convenience only and shall not be used to interpret or construe its provisions.

11. **GOVERNING LAW.** This Agreement, and all matters arising out of or relating to this Agreement, shall be governed by the laws of the State of California, without regard to the conflicts of law principles. In any dispute, action or proceeding arising out of, related to, or in connection with this Agreement, the parties hereto consent to be subject to the exclusive jurisdiction and venue of the federal and state courts in Los Angeles, California. Each of the parties hereto consents to the service of process in any action commenced hereunder by certified or registered mail, return receipt requested, or by any other method or service acceptable under federal law or the laws of the State of California. AS TO ANY ACTION OR PROCEEDING ARISING OUT OF, RELATED TO OR IN CONNECTION WITH THIS AGREEMENT, THE PARTIES HERETO HEREBY AGREE TO WAIVE THEIR RIGHTS TO A TRIAL BY JURY. In the event of a dispute under this Agreement, the parties hereto agree to binding arbitration

pursuant to the rules of the American Arbitration Association. Such arbitration shall take place in Los Angeles, California and California law shall apply; the parties hereto waiving any claim or defense that such forum is not convenient or proper. The prevailing party shall be entitled to attorneys' fees and costs. If Gigapix, MSH or NEWCO breach this Agreement, Consultant shall be limited to its remedy at law for money damages, if any, and shall not have the right to in any way enjoin or restrain the distribution, advertising, marketing or exploitation of the of any projects and/or any work or activities of Gigapix, MSH or NEWCO or each of their affiliates.

12. **COUNTERPARTS.** This Agreement may be signed in any number of counterparts and by facsimile, PDF, JPEG, or TIFF. Each such counterpart shall be deemed to be a duplicate original, and all of which shall constitute one agreement. Such separate execution shall be of full force and effect so long as each party has executed the same agreement. Facsimile, PDF, JPEG, or TIFF copies of this agreement and signatures thereon shall be valid and binding on the parties.

IN WITNESS WHEREOF, this Agreement has been duly executed by Gigapix and Chris Blauvelt Consulting, Inc. as of the date first above written.

GIGAPIX STUDIOS, INC.

Name: [signature]

Title: President

CHRIS BLAUVELT CONSULTING, INC.

Name: [signature] 5/6/11

Title: CEO

OZ3D, LLC

Name: [signature]

Title: Managing Member

GIGAPIX RELEASING, LLC

Name: [signature]

Gigapix Studios, Inc.

Title: Managing Member

Managing Member

GIGAPIX RELEASING, LLC

Name: [signature]

Geno Taylor

Title: Managing Member

Managing Member

MSH Entertainment Corp. ("MSH"),

Name: ______________________

Title: ______________________

"Schedule A"
Inducement Agreement

May 6th, 2011

NEWCO
Gigapix Studios, Inc.
9330 Oso Ave.,
Chatsworth, California 91311

    Re:  Consulting Agreement- Chris Blauvelt Consulting, Inc.  f/s/o Christopher Blauvelt

Ladies/Gentlemen:

    Reference is made to the agreement ("**Agreement**") dated concurrently herewith between you and Chris Blauvelt Consulting, Inc. ("Consultant") for the services of Christopher Blauvelt the undersigned, in connection with.

    As a material inducement to you to enter into the Agreement, the undersigned hereby represents, warrants and agrees as follows:

1.     I have heretofore entered into an agreement (the "**Employment Agreement**") with Consultant requiring me to render services to Consultant for at least the full term of the Agreement and authorizing Consultant to enter into the Agreement and to furnish my rights and services to you upon the terms, covenants and conditions thereof.

2.     I am familiar with all of the terms, covenants and conditions of the Agreement and hereby consent to the execution thereof; I shall be bound by and will duly observe, perform and comply with all of the terms, covenants and conditions of the Agreement as if I had executed it directly as an individual, even if the Employment Agreement should hereafter expire or be terminated or suspended, or if Consultant should be dissolved or should otherwise cease to exist; I hereby confirm that there have been granted to Consultant all of the rights granted by Consultant to you under the Agreement; and I hereby join in and confirm all grants, representations, warranties and agreements made by Consultant under the Agreement.

3.     I am under no legal or other obligation or disability that would prevent or restrict me from performing and complying with any of the terms, covenants and conditions of the Agreement to be performed or complied with by me.

4.     Unless I am deemed substituted for Consultant as a direct party to the Agreement pursuant to paragraph 7, below, I will look solely to Consultant and not to you for compensation for the services and rights I may render and grant to you under the Agreement and for the discharge of all other obligations of my employer with respect to my services under the Agreement.

5. You agree to notify me and Consultant in writing immediately upon receiving notice from any state or federal authority which purports to require you to pay any taxes or withhold monies from the compensation payable to Consultant or me under the Agreement and agree you shall cooperate with me, my advisors and the Consultant in responding to such state or federal authority prior to paying or withholding any amount allegedly required or permitted to be deducted ("Notice Provision"). If you have complied with this Notice Provision, I will indemnify and hold Gigapix, MSH, NEWCO and you and your parents, affiliates, subsidiaries, employees, directors, officers, agents, successors, assigns and licensees, and each of them, harmless from and against ***any and all taxes*** which you may have to pay and any and all any and all liabilities, judgments, losses, claims, demands, damages, penalties, interest, costs and expenses of every kind whatsoever (including, without limitation, reasonable attorneys' and accountants' fees and disbursements) which may be obtained against, imposed upon or suffered by you or any of the aforementioned parties or which you or any of such parties may incur ***by reason of your failure to deduct and withhold from the compensation payable under the Agreement any amount required or permitted to be deducted and withheld from the compensation of an employee under the provisions of any current state or federal statute and/or any amendments thereof and/or any statutes hereafter enacted requiring the withholding of any amount from the compensation of an employee.*** Inasmuch as you have the right to control my services and I am your "special employee" for purposes of all applicable workers' compensation laws, the rights and remedies of the undersigned and/or my heirs, executors, administrators, successors, and assigns shall be governed by and limited to those provided under such workers' compensation statutes if I should suffer or incur any injury, illness, disability or death arising out of or occurring in the course of my special employment pursuant to the Agreement.

6. If Consultant or its successors in interest should be dissolved or should otherwise cease to exist, or for any reason should fail, refuse or neglect to perform, observe or comply with the terms, covenants and conditions of the Agreement, I shall be deemed to be employed directly by you for the balance of the term of the Agreement upon the terms, covenants and conditions set forth therein.

7. If you serve Consultant with any notices, demands or instruments relating to the Agreement or the rendition of my services thereunder, such service upon Consultant shall constitute service upon me.

Very truly yours,

[signature] 5/6/11

Christopher Blauvelt