RICHARD M. CALLAHAN, JR.
225 South Lake Avenue, Suite 300
Pasadena, CA  91101
Telephone:  (626) 202-4060
Telecopier:  (626) 794-4676
State Bar No. 100446
Email: *rmcallahanjr@gmail.com*

Attorney for Defendant
GREGORY PUSATERI

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>                                           )<br>            Plaintiff,             )<br>                                           )<br>      vs.                                )<br>                                           )<br>DAVID PRITCHARD, *et al.,*    )<br>                                           )<br>            Defendants.        )<br>                                           )<br>                                           )<br>_____)  | Case No.  CR 14-282-R-4<br><br>**DEFENDANT PUSATERI'S (#4) REPLY TO THE GOVERNMENT'S OPPOSITION TO MOTION FOR JUDGMENT OF ACQUITTAL**<br><br>Date:  February 9, 2015<br>Time:  10:30 a.m.<br>Place: Courtroom of the Honorable<br>            Manuel L. Real |

Defendant Gregory Pusateri, by and through his counsel of record, hereby replies to the government's opposition [Doc. No. 272] to his motion for judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29(c).

Dated:  February 4, 2015.                   Respectfully submitted,
                                                           THE LAW OFFICES OF
                                                           RICHARD M. CALLAHAN, JR.

                                                           By: _____
                                                                 RICHARD M. CALLAHAN, JR.
                                                                 Attorney for Defendant
                                                                 GREGORY PUSATERI

**POINTS AND AUTHORITIES**

**I**

**INTRODUCTION**

Defendant Greg Pusateri has moved this Court for judgment of acquittal after his conviction on fraud charges relating to his employment as a salesperson at Gigapix. The government has responded by claiming that the Rule 29(c) motion for judgment of acquittal should be denied since "[t]he evidence against defendant was overwhelming." Mr. Pusateri now responds to the prosecution's opposition to his motion for judgment of acquittal. Contrary to the prosecution's claim, the evidence against Mr. Pusateri was far from "overwhelming," particularly since the testimony of the prosecution investor witnesses was not reliable.

**II**

**ARGUMENT**

**A.   A JUDGMENT OF ACQUITTAL IS WARRANTED SINCE NO RATIONAL FACTFINDER COULD HAVE FOUND MR. PUSATERI GUILTY BEYOND A REASONABLE DOUBT**

In the "Facts" section of the opposition, the prosecution summarizes the testimony of the prosecution investor witnesses, yet fails to mention any of the key points elicited on cross-examination that minimized—if not totally negated—the reliability of each investor's testimony. Specifically:

**1) Harold "Danny" Anderson:** The prosecution fails to point out that Anderson had previously invested in a private offering with an unrelated company not involving any of the defendants, and had signed documents indicating he was an accredited investor, had reviewed the PPM, and was aware of the risks of the investment. Anderson told the FBI he had read the PPM (so he would have been aware of the risk factors and the financial viability of Gigapix), and he and his wife Clara admitted they were accredited investors in the FBI questionnaire sent to Gigapix investors;

2) **Sandra Wilson:** Contrary to the prosecution's recollection of the facts, Sandra Wilson testified that she invested "mainly because some of our friends did," particularly Danny Anderson and his wife Clara, who had encouraged Sandra Wilson to invest in an earlier offering that failed dismally. As with Anderson, Sandra Wilson filled out documents for that unrelated investment claiming she was accredited, had read and understood the PPM, and was aware of the risks involved with such an investment. She filled out the same paperwork for the Gigapix investment, so she was clearly knowledgeable of the risks;

3) **Linda Hampshire:** Linda Hampshire's testimony hardly supports the prosecution's perception of the trial. Like Sandra Wilson, Linda Hampshire was also influenced by her friends in deciding to invest. In direct conflict with the prosecution's recollection of the testimony, Ms. Hampshire admitted that she knew there was risk associated with her investment, and disclosed that Greg never guaranteed she would not lose money. She admitted she read the PPM, as did her husband;

4) **Jerome Goodman:** Investor Jerry Goodman dealt with Greg Pusateri on a single investment in 2006, several years before the OZ3D offering. Mr. Goodman's memory of events regarding Gigapix was questionable, however, as he testified that Mr. Pusateri had given him a tour of the facility—at a time when Mr. Pusateri was not even employed at Gigapix.

In addition, the prosecution offers broad conclusions regarding the evidence presented at trial that is at times incorrect, at other times incomplete, and at all times significantly skewed. For example:

1. *"[Pusateri] admitted to defrauding 260 victims, and he profited by over $575,000"*[1]

---

[1] Government Opposition ("Opp.") at 9.

-3-

DEFENDANT PUSATERI'S (#4) REPLY TO THE GOVERNMENT'S OPPOSITION TO
MOTION FOR JUDGMENT OF ACQUITTAL

Mr. Pusateri never admitted to defrauding anyone at trial, let alone 260 investors. This claim is ludicrous. As far as his "profit," Greg received commissions of $575,000 between 2006 and 2010, or approximately $115,000 per year. The evidence was clear that Greg strongly believed in the future success of the company. One government witness, Sandi Fox, testified that she had made 20% commission in her previous telemarketing job. Such commissions were not unreasonable under the circumstances.

> 2. "[E]veryone was well aware that the company was in dire financial straits as of mid-2009"[2]

This blanket statement is simply not supported by the evidence at trial. As noted in the underlying motion, government witness Tiffany Ryan testified that Pritchard never let on to salespeople that the company was having financial problems; witness Shawn Walker testified Pritchard deceived investors, creditors and even employees. The notion that "everyone was well aware" of financial problems at Gigapix is pure speculation.

> 3. "Given that the investors were clearly unsophisticated and knew nothing about movies, defendant cannot hide behind boilerplate PPM's he told the investors to ignore"[3]

One of the chief purposes of a PPM in any offering is to provide confirmation that the investor is aware of the risks involved in the offering. To avoid litigation later, investors must sign the subscription agreement affirming they are familiar with the PPM and risks before they can invest. Greg Pusateri is not "hiding" behind the PPM as the prosecution asserts, but simply reinforcing the fact that each of the prosecution investor witnesses represented that they understood the PPM and the risks involved.

> 4. "Defendant next claims that he believed in the company because he received stock. However, he did not put his own money into the company—he received an enormous amount of money from the company—and actually, directly from the investors."[4]

---

[2] Opp. at 10.
[3] Opp. at 11.
[4] Opp. at 11.

-4-

It is undeniable Greg received stock in Gigapix, and was a substantial shareholder. Contrary to the prosecution's claim that he did not put his own money into Gigapix, Mr. Pusateri testified that he was given the choice of a bonus of cash or Gigapix stock, and he chose stock. It cannot be said he did not have his own money in the company.

> 5. *"[Sales manager Ken] Gross actually was quite aware that salespeople earning high commissions, such as defendant, often make misrepresentations, and that his job at Gigapix was to make sure that salespeople did not do this."*[5]

The prosecution attempts to turn the testimony of Ken Gross into something ominous, when actually it was quite the opposite. Gross testified that while it was his job to make sure salespeople at Gigapix were not making misrepresentations, he never heard Greg make misrepresentations, and Gross never reprimanded Greg for anything Greg said to an investor. As noted in the underlying motion, Gross testified the primary reason he wanted Greg to join the other salespeople was since he was such a good salesperson he could teach the rest of the sales team the proper way to sell. Mr. Pusateri was given a private office because of his experience; there was nothing surreptitious about Mr. Pusateri having his own office.

> 6. *"The testimony of the investor victims was devastating to defendant, as even he admitted that the things they testified he told them were false."*[6]

The prosecution in this case utilized a trial device in which the defendant is questioned about allegations by investors of purported representations made by the defendant, and then asked whether such a representation—if actually made by the defendant—would have been a lie. Ignoring for the moment that such testimony should not have been allowed since 1) it calls for speculation; 2) is argumentative; 3) it calls for improper opinion evidence, and 4) it calls for a legal conclusion, the testimony of Greg Pusateri agreeing that telling an investor that an investment in Gigapix or OZ3D carried

---

[5] Opp. at 12.
[6] Opp. at 13.

no risk would have been a lie adds nothing to the essential inquiry of whether Mr. Pusateri actually made these misrepresentations.

> *7. "[Pusateri] knew the investments were securities and he knew they had to be registered with the SEC. His only lame denial was that he thought Blauvelt would take care of getting the securities registered with the SEC. However, he continued selling all the way through until he left, even though the PPMs continued to note that the securities were not registered with the SEC."[7]*

The evidence at trial demonstrated only that Mr. Pusateri knew that the investment in OZ3D was an unregistered security that either had to be registered or exempted from registration. He believed Blauvelt when he told him that the regulatory issues had been resolved. But regardless of that, once the California Desist and Refrain Order was received, Greg voluntarily stopped selling OZ3D, essentially acting as a secretary and making appointments for Blauvelt to deal with the investors. Once the Desist and Refrain was issued, Greg neither willfully sold nor offered the investment in OZ3D.

## CONCLUSION

For the reasons stated, Greg Pusateri's Rule 29 motion should be granted.

Dated: February 4, 2015.

Respectfully submitted,
THE LAW OFFICES OF
RICHARD M. CALLAHAN, JR.

By: _____
RICHARD M. CALLAHAN, JR.
Attorney for Defendant
GREGORY PUSATERI

---

[7] Opp. at 13.