Stanley I. Greenberg (SBN 053649)
A Law Corporation
11845 West Olympic Boulevard, Suite 1000
Los Angeles, CA 90064
Telephone: (424) 248-6600
Facsimile: (424) 248-6601
Email: stanmanlaw@aol.com

Attorney for Defendant:
CHERIE BROWN

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>CHERIE BROWN,<br>Defendant. | **Case No. CR 14-282-R**<br><br>**POSITION RE: SENTENCING FACTORS; SENTENCING MEMORANDUM; EXHIBITS**<br><br>**Sentencing Date: February 9, 2015**<br>**Time: 10:00 A.M.** |

Defendant Cherie Brown hereby files her Position Re: Sentencing Factors, Memorandum re: Sentencing and Exhibits.

Dated: February 5, 2015

Respectfully submitted,

/s/
Stanley I. Greenberg
Attorney for Defendant
CHERIE BROWN

**TABLE OF CONTENTS**


I. Introduction……………………………………………………………………1

II. Grounds For Downward Variances………………………………………………2

A. Disagreement with Policy Decisions Underlying Guidelines……….2

B. The Presumptive Guidelines Range May be "Greater than Necessary" under § 3553 (a)……………………………………………………2

C. Defendant's Role in the Conspiracy Warrants Less Time to Distinguish Her from Higher Ups…………………………………3

D. First Conviction Later in Life Justifies a Downward Variance……...3

E. An Older Defendant Represents Less Risk of Recidivism and Reduces the Need for Lengthy Incarceration………………………………..4

F. Where the Defendant is Responsible for Only Part of the Loss, or Where There are Multiple Causes, The Loss Calculation is Overstated and Justifies a Downward Variance……………………………….4

G. The Good in the Defendant's Life Mitigates the Bad and Justifies a Lower Sentence……………………………………………………..4

H. Probation to Include Substantial Community Service is a Well-Recognized Adequate substitute for Incarceration……………………5

III. Factual Corrections and Clarification from the PSR……………………….5

IV. Objections to PSR Guideline Calculations………………………………….7

A. Introduction…………………………………………………………………7

B. The Evidence Does Not Support the Proposed Loss Adjustment……..8

C. The Government Has Failed to Prove the Alleged Loss of $14 million was Foreseeable to Cherie Brown…………………………………………10

D. Failure of Proof as to the Number of Alleged Victims…………………10

E. Failure of Proof That the Alleged Victims were "Vulnerable."……….11

V. Conclusion…………………………………………………………..12

# TABLE OF AUTHORITIES

## CASES

*Kimbrough v. U.S.*, 552 U.S. 85 (2007)……………………………………….……………2

*Pepper v. U.S.*, 131 S. Ct. 1229 (2011)…………………………..……………2

*U.S. v. Adelson*, 441 F. Supp. 2d 506 (S.D.N.Y. 2006)……………….…………………4

*U.S. v. Ameline*, 409 F.3d 1073, 1086 (9th Cir. 2005) (en banc)………………………7

*U.S. v. Armstead*, 552 F.3d 769, 780-81 (9th Cir. 2008)……………….……………10

*U.S. v. Arutunoff*, 1 F.3d 1112 (10th Cir. 1993)………………………………………4

*U.S. v. Autery*, 555 F.3d 864 (9th Cir. 2009). ………………………………………4

*U.S. v. Bannister*, 2011 WL 1361539 (E.D.N.Y. 2-11) …………………………2

*U.S. v. Barany*, 884 F.2d 1255, 1261 (9th Cir. 1989) ……………………………9

*U.S. v. Brown*, 771 F.3d 1149, 1160 (9th Cir. 2014)………………………………9

*U.S. v. Brown*, 771 F.3d 1149, 1162 (9th Cir. 2014) ……….……………………10

*U.S. v. Gregorio, 956 F.2d 506 (S.D.N.Y. 2006).* ………………….………………4

*U.S. v. Jiminez-Gutierrez*, 491 F.3d 923 (8th Cir. 2007) …………………………3

*U.S. v. Khan*, 325 F.Supp.3dd 218, 227 (E.D.N.Y. 2004). ……………………2

*U.S. v. Luca*, 183 F.3d 1018, 1025 (9th Cir. 1999)….…………………………..11

*U.S. v. Munoz*, 233 F.3d 1117 (9th Cir. 2000)……………………………………7

*U.S. v. Najjar*, 255 F.3d 979, 984 (9th Cir. 2001). ………………………………9

*U.S. v. Paul*, 561 F.3d 970 (9th Cir. 2009) ………………………………………4

*U.S. v. Showalter*, 569 F.2d 1150, 1160 (9th Cir. 2009). ………………..…………8, 9, 10

*U.S. v. Smith* 2008 SL 1816564 (4th Cir. 2008) ……………………………………………4

*U.S. v. Staten*, 466 F.3d 708, 717 (9th Cir. 2006)…………………………………………..7

*U.S. v. Wadena*, 470 F.3d 735 (8th Cir. 2006) …………..……………………………………4

*U.S. v. W. Coast Aluminum Heat Treating Company*, 265 F.3d 986, 991 (9th Cir. 2001)..7

**STATUTES**

18 U.S. C. § 3553 (a) …………………………………………………………2, 5, 12

**OTHER AUTHORITIES**

U.S.S.G. §2B1.1 Comment (n.1) ………………………………..……………8, 10

U.S.S.G. Application Notes 3(A)(i) and 3(A)(ii). ……………………………………10

§ 3A1.1…………………………………………………………………..………11

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.**

**Introduction**

Attached as Exhibit A are 42 character reference letters written to the Court on behalf of Ms. Brown, in addition to a letter from Ms. Brown. For ease of reference, they are preceded by a list of their respective names and relationship to Ms. Brown. These are from business and social friends and acquaintances. Three are from investors in Gigapix (people the Government would likely identify as "victims," but who do not blame or fault Ms. Brown for their financial losses). All volunteered to write letters of support to the Court when they heard of her legal situation. As the Court reviews these letters we believe the Court will likely note there are two dominant themes articulated by the authors.

The first is Ms. Brown's long connection to Alcoholics Anonymous ("AA"). She is long time very active member who has been clean and sober for just under 40 years. These letters will verify and expand upon Ms. Brown's long history of AA activity, including the many people she has helped, supported, and assisted in turning their lives around. These good works suggest a sentence variance for all the good she has contributed (see further discussion below).

The second theme in these letters is that Ms. Brown is universally regarded as a person of impeccable honesty and integrity. Most were shocked when they heard of the

legal charges against her as well as the conviction. Many express the view that they still do not believe the accusations even after the jury convicted her.

We submit the content of these letters, coupled with the facts and arguments set forth below, justify and suggest a significant sentence reduction from those suggested by the Advisory Sentencing Guidelines.

**II.**

**Grounds For Downward Variances**

A. Disagreement with Policy Decisions Underlying Guidelines

The District Court is free to impose a below Guideline sentence simply because it disagrees with the policy decisions underlying the Guidelines. *Pepper v. U.S.*, 131 S. Ct. 1229 (2011). This extends further to policy decisions driven by Congressional directives. *Kimbrough v. U.S.*, 552 U.S. 85 (2007).

B. The Presumptive Guidelines Range May be "Greater than Necessary" under § 3553 (a)

The Advisory Guideline ranges are notoriously arbitrary and often bear no logical connection to calculating a proper sentence. The court is therefore free to vary downward should it conclude that the Advisory Guideline Range is "greater than necessary" within the meaning of 18 U.S. C. § 3553 (a). *U.S. v. Bannister*, 2011 WL 1361539 (E.D.N.Y. 2-11); *U.S. v. Khan*, 325 F.Supp.3dd 218, 227 (E.D.N.Y. 2004).

//

C. Defendant's Role in the Conspiracy Warrants Less Time to Distinguish Her from Higher Ups.

Regardless of the presumptive Advisory Guideline range, a lesser sentence may be warranted to more accurately reflect the defendant's role in the offense. *U.S. v. Jiminez-Gutierrez*, 491 F.3d 923 (8th Cir. 2007). Here, for example, the Court heard, saw and read ample evidence to demonstrate that David Pritchard and Christopher Blauvelt deliberately misled not only their investors, but their sales people and employees as well. Even more stunning is this fact: The Government apparently now concedes that Colin Mutton, Shawn Walker, and Ken Gross (supervisors all), along with Steve Roth and Nick Hines, were all criminally culpable, with full knowledge they were engaging in fraud. (See footnote 1, PSR of Cherie Brown). Yet none of them were indicted. Instead, the prosecution went after Cherie Brown.

This is precisely the kind of situation that invites to court to make a downward variance to avoid gross disparity. Several people who should have been indicted were not and will go scot-free, while Cherie Brown faces sentencing in a federal prison. *Jiminez-Gutierrez, supra*.

D. First Conviction Later in Life Justifies a Downward Variance

Ms. Brown is now 65 years old. She has not only led a law abiding life, but judging by the character reference letters she has led an exemplary life. This includes her selfless devotion and help to others in AA. The 9th Circuit has held that such a

circumstance justifies a lower sentence. *U.S. v. Paul*, 561 F.3d 970 (9th Cir. 2009); *U.S. v. Autery*, 555 F.3d 864 (9th Cir. 2009).

E. An Older Defendant Represents Less Risk of Recidivism and Reduces the Need for Lengthy Incarceration

This is related to the last point. Obviously, the reduced recidivism risk diminishes the need to protect society, thereby suggesting the propriety of a lesser sentence. *U.S. v. Smith*, 2008 SL 1816564 (4th Cir. 2008); *U.S. v. Wadena*, 470 F.3d 735 (8th Cir. 2006).

F. Where the Defendant is Responsible for Only Part of the Loss, or Where There are Multiple Causes, The Loss Calculation is Overstated and Justifies a Downward Variance

Here, Ms. Brown was a single salesperson, albeit a successful one. There were dozens of others at Gigapix responsible the loss figure. Ms. Brown's role in any loss was limited to her own activities, and not that of any others. Accordingly, the law justifies a reduction, either as a departure under the Guidelines, a variance, or both. *U.S. v. Arutunoff*, 1 F.3d 1112 (10th Cir. 1993*); U.S. v. Gregorio, 956 F.2d 506 (S.D.N.Y. 2006).*

G. The Good in the Defendant's Life Mitigates the Bad and Justifies a Lower Sentence.

We have already addressed all the good in Mr. Brown's life. That history is thoroughly documented in the 42 character reference letters attached. It far offsets the bad reflected in this conviction. Many courts have recognized this situation justifies a substantially shorter sentence. *U.S. v. Adelson*, 441 F. Supp. 2d 506 (S.D.N.Y. 2006).

H. Probation to Include Substantial Community Service is a Well-Recognized Adequate substitute for Incarceration

We urge the Court to balance Ms. Brown's age, her prior lawful history, her documented good works, her role as a parent and grandparent, the nature of the crime and her role in this offense. We further suggest that, upon balancing those factors, a term of probation, coupled with community service, is more than adequate to address the commands of 18 U.S.C. § 3553 (a).

## III.

## Factual Corrections and Clarification from the PSR

Some of the following are obviously more consequential than others:

1. ¶ 17 a): Ms. Brown did not supervise any "fronters." Ms. Brown did not supervise anyone.

2. ¶ 80: Ms. Brown's mother died of cancer, not natural causes.

3. ¶111: Mr. Brown did not work as a cashier in a dining facility of a Veteran's Administration Facility. She worked in a professional capacity in the psychiatric and mental health wards of the V.A. Hospital for approximately 3 ½ years, between 1975-1979.

4. ¶ 82: It is incorrect that Ms. Brown did not witness any physical abuse at home when she was growing up. She did witness her mother abuse her father (not vice-versa).

5. ¶ 24: Ms. Brown continues to deny the allegations of criminally false misrepresentation. To the extent she may have provided incorrect information it was

because she was deceived by management, a point well established by the evidence at trial.

6. ¶¶'s 30 a) and 58: "J.G." was not 85 at the time of his investments. He testified he was 85 at the time of his testimony at trial 3 months ago. His investments were several years earlier.

7. ¶ 30 f): Contrary to the picture portrayed by the prosecution at trial, this paragraph correctly reflects that the sales people (including Ms. Brown) would not have known the company was struggling financially internally. This is according the Chief Financial Officer Colin Mutton, who easily could have been indicted (and almost certainly convicted) based on his false statements to the FBI and his trial testimony.

8. ¶ 30 h): The PSR is correct that David Pritchard raised $700,000 from another investor. That investor was "D.Z," who misled the jury into believing it was Ms. Brown who convinced him to invest those funds. This becomes significant because we attempted to show that D.Z. sued David Pritchard and blamed Pritchard for misleading him into making that $700,000 investment. However, the Court would not allow that impeachment.

9. ¶ 43 c): The only misrepresentations Ms. Brown ever heard was once when she overheard Steve Roth; and she immediately brought that to the attention of Mr. Pritchard at a sales meeting; and the second time when she overheard Tiffany Ryan and immediately brought that to the attention of Shawn Walker so he could correct her.

10. ¶ 43 d): Ms. Brown did not know how much money had been raised during the time she worked for Gigapix. It is true that she became aware employees were not being paid and she raised questions about why they were not being paid and what did the company do with the moneys it had raised. This was shortly before she resigned from the company in 2011 because of doubts about the company's integrity and honesty.

**IV.**

**Objections to PSR Guideline Calculations**

A. Introduction

We start with the fundamental and uncontested notion that it is the Government that bears the burden or proof when it comes to proving facts arguably in support of a sentence increase. *U.S. v. Ameline*, 409 F.3d 1073, 1086 (9th Cir. 2005) (en banc). Moreover, given the dramatic and disproportionate impact on the potential sentence guideline, the burden to prove the loss resulted from acts of omissions of the defendant must be proven by a "clear and convincing evidence" standard. *U.S. v. Staten*, 466 F.3d 708, 717 (9th Cir. 2006); *U.S. v. Munoz*, 233 F.3d 1117 (9th Cir. 2000).

Finally, all courts have recognized that rigid application of the Guidelines can result in disparate and aberrant results. Accordingly, the 9th Circuit (among others) has directed sentencing courts to take a "realistic, economic approach to determine what losses the defendant truly caused or intended to cause." *U.S. v. W. Coast Aluminum Heat Treating Company*, 265 F.3d 986, 991 (9th Cir. 2001).

Gigapix was not a sham company created for the sole reason of fleecing people of their money. To the contrary, it was an entertainment company with the goal of producing entertainment and creating profits. It did not turn out to be profitable; however, it was not a business that set out simply to create losses. Hence, there is no "intended loss" as set forth in U.S.S.G. § 2B1.1.

Additionally, the mere fact that an investor lost money and/or saw no return does not, *ipso facto*, make that investment a "harm that resulted from the offense." Application Note 3(a)(i), §2B1.1. Nor can the court simply presume that every investor was a "victim" whose "harm resulted from the offense." Thus, the Court may not simply estimate the number of alleged "victims" in order to enhance a sentence under § 2B1.1. *U.S. v. Showalter*, 569 F.3d 1150, 1160 (9th Cir. 2009).

B. The Evidence Does Not Support the Proposed Loss Adjustment

The PSR proposes a + 20 adjustment for a loss in the amount of $14,352,662.15. See ¶ 54, PSR. We note first that this is not based on any reliable or trustworthy evidence. In facts, as the PSR concedes, this calculation is based exclusively "on information provided by the Government." ¶54.

Secondly, of the many hundreds of Gigapix investors, the Government called as a witness against Ms. Brown only three: E.T., J.G. and D.Z. Ms. Brown herself called as witnesses two additional investors, J.F. and P.R. Although their testimony was restricted, it was plain they did not believe they were defrauded by Ms. Brown; nor that they were her "victims." Additionally, supporting letters have been offered from investors A.R. and

W.J.C. (in addition to trial witness P.R.). It is plain none of these people view themselves as "victims" of Cherie Brown.

Therefore, of the 7 Cherie Brown investors who have either testified, written letters, or both, 4 of them—more than 50%--deny they were deceived or victimized by Cherie Brown. We recognize this is a small sample from the hundreds of Gigapix investors; and that is the point. It underscores the complete unreliability of the Government and P.O. calculations. The Government has offered nothing but a list of over 600 alleged "victims." There is a total absence of evidence to show that any more than the 3 called by the government were misled by misrepresentations and/or suffered any loss as a result of these alleged misrepresentations.

The law is clear that to sustain its allegations, the Government must present actual "proof" to support the loss calculations alleged. *U.S. v. Brown*, 771 F.3d 1149, 1160 (9th Cir. 2014); *U.S. v. Showalter*, 569 F.2d 1150, 1160 (9th Cir. 2009). Moreover, the Court must make an independent determination as to the amount of loss suffered as a result of the defendant's conduct. *U.S. v. Barany*, 884 F.2d 1255, 1261 (9th Cir. 1989); *U.S. v. Najjar*, 255 F.3d 979, 984 (9th Cir. 2001). The court may not just "assume" that all investors are "victims." This might be true of a sham company selling phony lottery tickets or the like, but Gigapix is not in that category. It was not a sham company. It was a real company with real projects, real contracts, real employees and genuine efforts. Indeed, the government has presented no evidence at all bearing on whether the conduct as to the great majority of investors was even criminal in nature.

C. The Government Has Failed to Prove the Alleged Loss of $14 million was Foreseeable to Cherie Brown.

The trial evidence was clear that Cherie Brown worked privately in her own office with little contact with other sales staff. With rare exceptions, she was not privy to what other investors were told. Therefore, any loss beyond her own investors was not foreseeable, or attributable, to her. Her loss adjustment should therefore be limited to E.T., J.G., and D.Z. This is the clear mandate of U.S.S.G. Application Notes 3(A)(i) and 3(A)(ii).

D. Failure of Proof as to the Number of Alleged Victims

The PSR proposes to add +6 for more than 250 alleged victims. ¶ 55, PSR. But no actual proof is cited to support that calculation. In fact, the only thing cited by the P.O. as justification is that the P.O relied on unidentified "case materials" to conclude unidentified co-defendants caused "actual losses" to 461 victims. The absence of actual proof is critical. There is no proof presented that each of those victims sustained a loss AND that loss was attributable to the conduct of Cherie Brown, as required. U.S.S.G. §2B1.1 Comment (n.1). Courts have not hesitated to reverse where large groups of people are added to lists of supposed "victims" without proof of causation by the defendant. *U.S. v. Brown*, 771 F.3d 1149, 1162 (9th Cir. 2014); *U.S. v. Armstead*, 552 F.3d 769, 780-81 (9th Cir. 2008); *U.S. v. Showalter*, 569 F.3d 1150, 1160 (9th Cir. 2009).

//

E. Failure of Proof That the Alleged Victims were "Vulnerable."

This adjustment is proposed at ¶ 58 of the PSR. But it suffers from the same failure as those discussed above: an absence of proof. The Government must prove the defendant knew or should have known that the alleged victim of the offense was a "vulnerable victim" within the meaning of § 3A1.1. Neither the Government nor the P.O. has presented such proof.

The law is very clear on this point. The Court must first make a determination whether one or more of the alleged victims belong to a class that is particularly vulnerable to the activity in question. Second, the Court must determine if one or more specific individual victims were known by the defendant to be "unusually vulnerable" by virtue of member ship in the identified class. *U.S. v. Luca*, 183 F.3d 1018, 1025 (9th Cir. 1999).

A good example is witness "J.G.". He is identified as being a "vulnerable victim, according to the government and the PSR, because he was 85 at the time of his investments. First, this is factually incorrect. J.G. testified he was 85 at the time he appeared in court. His investments were made when he was in his 70's. Moreover, although elderly, he was alert, responsive and obviously intelligent. Age alone does not make him a "vulnerable victim." Indeed, "age, standing alone, does not establish someone as a special victim." *Luca, supra*. Instead, the Court must make the findings described above in order to impose this enhancement.

//

## V.

## CONCLUSION

Given her age, background and history in this case, coupled with her role in trying to assist the investors, there is nothing to suggest any need to further deter her, or fear any recidivism and/or danger to society. Given the mandate of § 3553(a) to impose a sentence "sufficient, but not greater than necessary," we urge a non-custodial sentence to include community service; thereby allowing her to continue her well-documented good works in the community.

Dated: February 5, 2015

Respectfully submitted,

/s/
Stanley I. Greenberg
Attorney for Defendant
CHERIE BROWN