Stanley I. Greenberg (SBN 053649)
A Law Corporation
11845 West Olympic Boulevard, Suite 1000
Los Angeles, CA 90064
Telephone: (424) 248-6600
Facsimile: (424) 248-6601
Email: stanmanlaw@aol.com

Attorney for Defendant:
CHERIE BROWN

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    vs.<br><br>CHERIE BROWN,<br><br>    Defendant. | Case No.  CR 14-282-R<br><br>**REPLY OF CHERIE BROWN TO GOVERNMENT POSITION RE: SENTENCING FACTORS**<br><br>Date:  February 23, 2015<br>Time:  10 A.M.<br>Place. Courtroom 8 |

Defendant Cherie Brown hereby offers this brief to reply to certain allegations and arguments in the Government's Position re: Sentencing Factors.

Dated:  February 16, 2015             Respectfully submitted,


                                        _____/s/_____
                                        Stanley I. Greenberg
                                        Attorney for Defendant
                                        CHERIE BROWN

1

I. **Victim Related Issues**

We still assert that, for the reasons previously urged, the Government has failed to prove by competent evidence the number of alleged victims; and, accordingly, reliable proof as to the alleged loss amount.

The Government has filed and is relying on the same victim impact statements as filed in the cases of defendants Pritchard and Blauvelt. Other than witness Jerry Goodman, who testified at trial, there is only a single victim impact statement with anything to say about Cherie Brown. The Government has placed great weight, and quoted at length, the victim impact statements even though she is not mentioned; but only when the impact is adverse. What about those where the impact is favorable to the defendant? Of all the statements the Government has chosen to quote (none of which relate to Cherie Brown), it has neglected to include that single statement by alleged victim R.T.B. We quote it verbatim here:

> "I think that Cherie Brown was just a salesperson and <u>should not have to serve time</u>. She alerted me to the problems and save [sic] me $25,000 that I was going to invest. Thank you Cherie Brown." (Emphasis added)

(See Victim Impact Statement of R.T.B. at page 88 of the Government's Filing of Supplemental Impact Statements). (Under Seal).

This is important for several reasons. First, we think the Court will likely agree this is an odd template by which to defraud people; that is, urging them NOT to send

2

money, rather than encouraging them to send money.  It undermines the Government's entire theory of prosecution, and its reasons for urging such harsh punishment.  (The court—and jury—likely would have heard from R.T.B. and other similar defense witnesses had the court not sustained the government's objections to such witness testimony on the grounds of hearsay).

Secondly, it corroborates Ms. Brown's trial testimony. The court may recall she testified that upon learning of the company's financial difficulties, she stopped selling, urged investors to demand financial information, and told potential investors they should NOT invest.  She specifically mentioned R.T.B. as one of those she told not to invest. Thus, here is R.T.B., in his own words, without prompting, confirming exactly what she said at trial.  She alerted him to the problems at the company, discouraged him from investing and saved him $25,000.  When has the Court ever seen a purported victim actually thank the person convicted of defrauding him for saving him money?  When he says he does not believe Ms. Brown should serve time, it is for good reason.

Third, this is a perfect example of why the Government's loss calculation and the number of victims are so completely and demonstrably unreliable. Of the hundreds of investors, the Government has submitted statements from less than 50.  Only two even mention Cherie Brown, and of those two, one of them exonerates her and thanks her for saving him $25,000.  How many others of these might there be had the government done its homework more thoroughly?

Finally, we submit this is a very important point for this reason. The government urges a harsher sentence, in part, because Ms. Brown "is directly responsible for more of the pain and misery" than any other salesperson. Govt. Position, p. 34, lines 22-23. To that we say, "Where is the evidence of the pain and suffering she supposedly caused?" The Court has now heard from eight (8) investors who had contact with Ms. Brown (either at trial, by supporting letter, or victim impact statement). Of those eight, a clear majority of five count themselves among her supporters. One thanked her for saving him money. Others have described how she was honest and forthright with them. Others say they do not blame her or consider themselves her "victim." The law is clear that the Government bears the burden of proof when seeking to enhance a sentence. *U.S. v. Ameline*, 409 F3d 1073, 1086 (9th Cir. 2005 (en banc). The government has offered only rhetoric, but not the supporting evidence the law requires for this claim.

II. **Factual Corrections from Defendant's Position Re: Sentencing**

Undersigned counsel made two minor errors in her Sentencing Position we wish to correct:

A. As the Court now knows, Ms. Brown has a lengthy history with Alcoholics Anonymous and has been sober for almost 40 years. Counsel referred to her as being "clean and sober" for nearly 40 years. In AA vernacular, the reference to being "clean" suggests a history of drug use. Counsel was unaware of that and Ms. Brown wants the Court to know she has never used illegal drugs. It is her near 40 years of sobriety of which she is rightfully grateful.

4

B. Counsel incorrectly stated that Ms. Brown had once overheard Tiffany Ryan misrepresenting to an investor. That is incorrect. The true facts, as verified by other witnesses, is that an investor reported to her something said by Ms. Ryan. If said, she thought that was incorrect and reported it to management to be sure Ms. Ryan was corrected.

### III. Factual Errors from Government Position

The Government has set forth in a section titled "Facts" the purported facts as the Government sees them (See Govt. Position, pp 1-10). It should more aptly be named "Facts As We Wish They Existed." The Court will note there are no citations to the record to support these assertions. We recognize the trial is over, the jury has spoken and the Court has denied our post-trial motions. We further recognize the Court applied the standard of viewing the evidence in the light most favorable to the prosecution. If for no other reason than to assure our silence is not taken as concurrence, we do wish to address a handful of those assertions that are blatantly false and/or misleading, for fear it might impact the Court's view as to an appropriate sentence.

### A. The False Claims that "Everyone Knew."

The Government's Position is laden with references that "everyone knew what was going on" or "everyone knew of the financial condition of the company" and the like. This is untrue, unsupported by the evidence and clearly speculative. To the contrary, the trial testimony was that the sales people were deliberately NOT told about the company's financial position. Indeed, the CFO, Colin Mutton, confirms the sales people would NOT

5

have known the poor financial condition of the company. (See PSR, p. 15, ¶33 f). This was consistent with his pretrial interviews and trial testimony. We are not claiming the company experienced no financial difficulties, but it would not have been so immediately obvious to those not in management. They saw and heard about the success of Baker Boys, and the Workaholics series (still playing on Comedy Central), among other ongoing projects.

One of the more egregious misrepresentations is that Shawn Walker "overheard Cherie Brown speaking to David Pritchard about the financial situation." (Govt. Position, p. 5, line 24 and p 13, lines 11-12). The implication is that Ms. Brown was always fully aware of the company's financial condition. What the Government has misrepresented was Mr. Walker's testimony that what he heard was Mr. Brown in Pritchard's face demanding an explanation, as well as the timing. It wasn't that she "knew;" rather, it was that she was trying to find out. That is what Shawn Walker overheard.

To be sure, the employees, including sales people, did learn about the company's financial condition over an extended period of time, some sooner than others. In fact, that is what caused Ms. Brown to stop selling, warn investors and resign from the company when she learned in 2011. But she most definitely did not know in 2009, nor did she tell the FBI agents that when they interviewed her.

### B. Erroneous Allegation Re: Investor D.Z.

The Government continues to wrongly assert that investor D.Z. relied on Cherie Brown for his investment in Gigapix Releasing when the record is clear he relied on

David Pritchard, and, in fact, sued Pritchard for specific fraud in that regard. It is further false that the Government continues to claim, "Nothing came from that lawsuit." The true fact, as reflected in the trial testimony, is that the lawsuit is still pending and being actively pursued. In other words, it is not yet resolved. Thus, it is hardly accurate to say "nothing came from it."

Also, when the government argues these companies were a sham, the Court should keep in mind, as D.Z. testified, that Gigapix Releasing continues to operate and release films to this day; so it is hardly a "sham" comparable to some phony lottery, for example.

### C. Erroneous Allegation Regarding Investor J.G.

The Government continues to erroneously assert that investor J.G. visited Gigapix when being solicited for an investment. The Court may recall the trial testimony contradicted that. Gigapix no longer existed at the location where J.G. claims he visited to consider an investment.

### IV. Government Is Urging Court to Commit Error

It is crystal clear that the government bears the burden of proof when arguing facts to justify a sentence increase. *U.S. v. Ameline*, 409 F.3d 1073, 1086 (9th Cir. 2005) (en banc). And yet the Government urges a harsher sentence because Ms. Brown previously worked at Big Sky Entertainment (Govt. Position, p. 15). The Government acknowledges Ms. Brown was neither accused nor convicted of any crime while there, but still urges she be punished because that company allegedly "is the subject of state and federal fraud investigations." *Id.,* at lines 16-17. This hardly meets the requirement of

7

*Ameline, supra.* Indeed, it hardly meets any legally recognizable standard since there is no proof of criminal conduct or her knowing participation in it. It would be tantamount to urging punishment of Enron employees because there was a state and federal investigation of that company, regardless of their actual culpability.

## V. Conclusion

The record is clear there are substantial grounds for downward variance, including, *inter alia,* the following: age, substantial charitable and other good works, difficult childhood, otherwise law-abiding life (See discussion in Defendant's Position). Even the Government agrees a downward variance is appropriate (Govt. Position, p. 35). Although we have not seen the Recommendation Letter from Probation, we have read the report and spoken to the Probation Officer. We would be surprised if she has not made some of the same points to the Court.

Clearly, Ms. Brown presents no danger to the community. Even the Government concedes that point (Govt. Position, p. 36). We remind again that a term of Probation, coupled with community service and perhaps home confinement is a well-recognized, and more than satisfactory, substitute for incarceration. This would also address another important sentencing consideration: A non-custodial sentence would allow Ms. Brown to return to the work force and contribute to whatever restitution the Court may order.

//

//

8

Unlike Mr. Blauvelt, by comparison, Ms. Brown actually does have the skills and ability to return to the work force and contribute towards restitution.[1]

Dated: February 16, 2015          Respectfully submitted,

                                       /s/
                               Stanley I. Greenberg
                               Attorney for Defendant
                               CHERIE BROWN

---

[1] Ms. Brown's daughter-in-law from Italy just submitted a letter she urges the Court to consider before sentencing. It is attached.

9